STATE OF NORTH CAROLINA v. ANTOINE LAVELLE SANDERS

No. 9226SC1339

(Filed 2 November 1993)

**1. Searches and Seizures § 77 (NCI4th) — license check — defendant detained and searched — evidence seized — no unreasonable detention — suppression of evidence not required**

There was no merit to defendant's contention that the trial court should have granted his motion to suppress evidence seized from his person because the officers' initial stop of him was an unreasonable detention under principles of the Fourth Amendment, since defendant was stopped at a roadblock set up for the purpose of checking drivers' licenses and registrations, and such spot checks do not amount to unreasonable detention.

**Am Jur 2d, Searches and Seizures §§ 52, 190.**

**2. Searches and Seizures § 82 (NCI4th) — officer's suspicion that defendant armed — determination to frisk reasonable**

An officer's determination to frisk defendant was lawful where defendant appeared to stop before approaching a license check point; once at the check point, defendant informed the officer that he was carrying no identification, did not own the vehicle, and could provide no registration for the car; the officer could reasonably suspect that the car might have been stolen; the officer legitimately asked defendant to step out of the car; the officer then observed a bulge in defendant's pocket; the officer's concern that defendant might be armed was reasonable; and the officer could properly ask defendant to turn around and put his hands on the car so the officer could search him for weapons.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**3. Searches and Seizures § 58 (NCI4th) — frisk proper — seizure of cocaine unreasonable**

An officer properly frisked defendant where there was no evidence that the officer felt a packet of cocaine in defendant's pocket in a manner that invaded the privacy of defendant beyond a pat down for weapons; however, because the officer was never asked and did not testify about whether it was

immediately apparent to him that the item he felt was contraband, his seizure of the packet of cocaine was unreasonable under the Fourth Amendment and the cocaine could not be used as evidence against defendant.

**Am Jur 2d, Searches and Seizures § 161.**

Appeal by defendant from judgment entered 15 September 1992 by Judge Robert W. Kirby in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 September 1993.

Defendant was charged with two counts of trafficking in drugs, in violation of N.C. Gen. Stat. § 90-95(h) (Supp. 1992). On 31 July 1992, he filed a motion to suppress evidence seized from his person without a warrant. After hearing testimony and arguments on the motion, the trial court denied defendant's motion to suppress. Defendant then entered pleas of guilty to trafficking in cocaine by possession and trafficking in cocaine by transportation. He appeals, challenging, pursuant to N.C. Gen. Stat. § 15A-979(b) (1988), the trial court's order denying his motion to suppress.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robin P. Pendergraft, for the State.*

*Paul J. Williams for defendant.*

McCRODDEN, Judge.

Defendant attacks the trial court's denial of his motion to suppress on two bases: (1) the officers' initial stop of him was an unreasonable detention, and (2) the search of him and the subsequent seizure of cocaine were unconstitutional under the Fourth Amendment. The evidence presented at the hearing on the motion to suppress tended to show the following. During the afternoon of 27 March 1992, Troopers V.C. Lessane and Brian Gregory of the North Carolina Highway Patrol set up a driver's license check at the west ramp of North Carolina Highway 16 at Beattie's Ford Road in Mecklenburg County. They posted no signs warning the public that a license check was being conducted. The troopers checked every car that approached the check point unless they were busy writing citations.

At approximately 1:45 in the afternoon, a white Pontiac Grand Am driven by defendant exited Highway 16 and entered the west ramp. As defendant approached the check point, he appeared to

come to a complete stop about 150 feet away from Trooper Lessane. Defendant then drove up to the check point, stopped the car, and rolled down his window. In response to Trooper Lessane's request for his driver's license and registration, defendant informed him that he did not have any identification, did not have the registration, and was not the owner of the car. The passenger in the car also failed to produce any identification.

Trooper Lessane then asked defendant to get out of the car. As defendant stepped from the vehicle, Trooper Lessane noticed a bulge about the size of two fists in the right pocket of defendant's jacket. The trooper then told defendant to face the car and place his hands on the car so that he could pat defendant down for weapons.

As defendant turned away from Trooper Lessane and placed his hands on the car, Trooper Lessane observed plastic protruding from the right pocket. While frisking defendant, the officer touched the bulge and noted that it felt like "hard flour dough." Trooper Lessane then removed from defendant's pocket a plastic bag which contained three smaller bags holding cocaine.

---

[1] We first address defendant's argument that the trial court should have granted his motion to suppress evidence produced by the search and seizure because the officers' initial stop of him was an unreasonable detention under principles of the Fourth Amendment made applicable to the States by the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081 (1961). In support of his contention, defendant cites the case of *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660 (1979). We find compliance with the principles enunciated in *Prouse*, and we reject defendant's argument.

In *Prouse*, the Supreme Court, holding that stopping an automobile and detaining its occupants implicated the Fourth Amendment prohibition against unreasonable seizures, stated:

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663, 59 L.Ed.2d at 673. *Prouse,* however, excepted from this general rule systematic roadblocks by which law enforcement officers stop all cars or use some random method of selecting cars to stop in order to check licenses and registrations. The Court specifically allowed states to develop methods for "spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Id.* at 663, 59 L.Ed.2d at 673-74.

In the case at hand, the two troopers, following guidelines established by their agency, selected a location and time during daylight hours for a license check. The troopers detained every automobile that passed through the check point, with the exception of those that came through while the officers were issuing citations to the operators of other vehicles. We can find no Fourth Amendment violation in the troopers' actions, and we overrule this assignment of error.

[2]  We next address defendant's argument that the trial court should have granted his motion to suppress evidence of the cocaine seized by Trooper Lessane because the search of his person and the seizure of cocaine violated his Fourth Amendment rights. This argument requires us to apply the "stop and frisk" law of *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889 (1968), and the "plain feel" exception to the requirement of a warrant for seizing contraband, as set forth in *Minnesota v. Dickerson,* --- U.S. ---, 124 L.Ed.2d 334 (1993).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The United States Supreme Court has stated that searches and seizures conducted outside the judicial process are *per se* unreasonable, subject to only a few specific, well delineated exceptions. *See Minnesota v. Dickerson,* --- U.S. at ---, 124 L.Ed.2d at 343-44. Such an exception was recognized in *Terry,* a case in which the U.S. Supreme Court held that an officer may conduct a pat down search, for the purpose of determining whether the person is carrying a weapon, when the officer is justified in believing that the individual is armed and presently dangerous. *Terry,* 392 U.S. at 24, 20 L.Ed.2d at 908; *see Dickerson,* --- U.S. at ---, 124 L.Ed.2d at 344.

Defendant argues that Trooper Lessane was not justified under *Terry* in frisking him because the officer did not have "the slightest

hint" that he carried a weapon. We disagree. The North Carolina Supreme Court in *State v. Peck*, 305 N.C. 734, 291 S.E.2d 637 (1982), held that in certain situations it is reasonable to seize a person and subject him to a limited search for weapons. In determining when it is reasonable to do so, the *Peck* Court adopted the *Terry* standard, *i.e.*, "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 742, 291 S.E.2d at 642. The Court stated:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him.

*Id.* at 741, 291 S.E.2d at 641 (quoting *Terry*, 392 U.S. 1, 30, 20 L.Ed.2d 889, 911).

In applying this standard to the facts in the instant case, it is clear that Trooper Lessane was justified in conducting a limited search of defendant for weapons because he could reasonably have concluded that defendant was involved in criminal activity and that the defendant might be armed. The evidence shows that, when defendant exited Highway 16 and entered the ramp, he appeared to stop before approaching the license check point; once at the check point, defendant informed Trooper Lessane that he was carrying no identification, did not own the vehicle, and could provide no registration for the car. In light of his unusual behavior, Trooper Lessane legitimately asked defendant to step out of the car. *See State v. Hudson*, 103 N.C. App. 708, 407 S.E.2d 583 (1991), *disc. review denied*, 330 N.C. 615, 412 S.E.2d 91 (1992). Trooper Lessane testified that people who are driving stolen cars often provide officers with false names and insist that they have no identification. We find these facts sufficient to create a reasonable suspicion that

criminal activity might be afoot, to wit: that the car might have been stolen.

Furthermore, after observing defendant's suspicious conduct, Trooper Lessane noticed a bulge in defendant's jacket pocket as defendant exited the vehicle. He testified that he was "mainly concerned about a weapon" and determining whether defendant was armed was the "number one thing." At the roadblock he asked defendant to turn around and put his hands on the car so that he could search him for weapons. Due to defendant's behavior and the bulge in defendant's jacket pocket, it was reasonable for Trooper Lessane to believe that defendant might have been armed.

[3] Having concluded that Trooper Lessane's determination to frisk defendant was lawful under the Fourth Amendment, we must next determine whether Trooper Lessane was acting within the bounds marked by *Terry* during the frisk. We hold that he was. In *Dickerson,* the Supreme Court stated that:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at ---, 124 L.Ed.2d at 346. The Court analogized the tactile discoveries of contraband to the plain-view doctrine, finding that the plain-view doctrine has an obvious application to instances in which an officer discovers contraband through his sense of touch during an otherwise lawful search. *Id.* at ---, 124 L.Ed.2d at 345-46. The *Dickerson* Court was concerned that, in conducting a search of this nature, an officer not go beyond the invasion of privacy necessary to determine whether the subject has a weapon. In the case before it, the Court determined that the officer had overstepped the bounds of *Terry* when, without believing the object to be a weapon, he squeezed, slid and otherwise manipulated the contents of the defendant's pockets.

In the case before us, we believe that the trooper's actions in frisking were within the bounds of *Terry*. There is no evidence that Trooper Lessane felt the packet of cocaine in a manner that invaded the privacy of defendant beyond a pat down for weapons.

STATE v. SANDERS

[112 N.C. App. 477 (1993)]

*Dickerson*, however, makes it clear that, prior to a lawful seizure, the identity of the contraband must be "immediately apparent," and on this requirement the State's case falls short. Trooper Lessane testified at the hearing on the motion that he observed a bulge in defendant's pocket and suspected a weapon; when, at his request, defendant leaned over his vehicle for a pat down, Trooper Lessane observed about an inch of plastic protruding from the same pocket. At that point he suspected drugs. His testimony made clear, however, that the main focus of the pat down was to ascertain whether defendant was armed. As he patted the pocket, he testified, he felt an object like "hard flour dough." He removed the packet of cocaine.

The State's case for using the seized contraband at trial, made prior to the Supreme Court's opinion in *Dickerson*, was deficient in one important aspect: Trooper Lessane was never asked and did not testify about whether it was immediately apparent to him that the item he felt was contraband. Failing this, his seizure of the packet of cocaine was unreasonable under the Fourth Amendment and may not be used as evidence against defendant.

We consequently reverse the trial court's order denying defendant's motion to suppress and remand to the trial court for a determination of the motion to suppress in light of *Dickerson* and the foregoing opinion. *See Foundry Co. v. Benfield*, 266 N.C. 342, 145 S.E.2d 912 (1966).

Reversed and remanded.

Judges JOHNSON and COZORT concur.