STATE OF NORTH CAROLINA v. THOMAS SHANE BARNES

No. COA95-1080

(Filed 2 July 1996)

**Searches and Seizures § 77 (NCI4th)— impaired driving— checking station—compliance with guidelines—motion to suppress improperly granted**

The trial court's findings did not support its conclusion that the highway patrol checking station where defendant was detained and checked for impaired driving was not conducted in accordance with required guidelines; instead, the findings showed that there was substantial compliance, there was no Fourth Amendment violation, and the trial court's order granting defendant's motion to suppress is reversed. N.C.G.S. § 20-16.3A.

**Am Jur 2d, Searches and Seizures § 52.**

Appeal by the State from order entered 7 June 1995 by Judge John Mull Gardner in Cleveland County Superior Court. Heard in the Court of Appeals 17 May 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Joseph P. Dugdale, for the State.*

*Horn, West, Horn, Pack & Brown, P.A., by C. A. Horn, for defendant-appellee.*

WALKER, Judge.

On 5 September 1993 defendant was charged with driving while impaired. Following a plea of not guilty, defendant filed a motion to suppress on the basis that the stopping and detaining of defendant's vehicle without probable cause or reasonable suspicion at a highway patrol checking station violated his constitutional rights. The trial court granted the motion and pursuant to N.C. Gen. Stat. § 15A-979 (1988), the State appealed.

The sole issue to be addressed is whether the trial court erroneously concluded that the stopping and detaining of defendant at the checking station was an unreasonable seizure under the fourth amendment.

The Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660 (1979), recognized that states should be permitted to develop methods for "spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Id.* at 663, 59 L.Ed.2d at 673-74.

The establishment and conduct of roadblocks and checking stations are governed by the North Carolina General Statutes Section 20-16.3A and State Highway Patrol Directive No. 63. (Directive 63). N.C. Gen. Stat. § 20-16.3A (1993) provides:

A law-enforcement agency may make impaired driving checks of drivers of vehicles on highways and public vehicular areas if the agency:

(1) Develops a systematic plan in advance that takes into account the likelihood of detecting impaired drivers, traffic conditions, number of vehicles to be stopped, and the convenience of the motoring public.

(2) Designates in advance the pattern both for stopping vehicles and for requesting drivers that are stopped to submit to alcohol screening tests. The plan may include contingency provisions for altering either pattern if actual traffic conditions are different from those anticipated, but no individual officer may be given discretion as to which vehicle is stopped or, of the vehicles stopped, which driver is requested to submit to an alcohol screening test.

(3) Marks the area in which checks are conducted to advise the public that an authorized impaired driving check is being made.

In addition, Directive 63 requires that "[a]ll roadblocks shall be marked by signs, activated emergency lights, marked Patrol vehicles parked in conspicuous locations, or other ways to assure motorists are aware that an authorized roadblock is being conducted. A blue light on at least one Patrol vehicle shall be operated at all times."

The court concluded that the checking station in this case failed to meet the established guidelines as set forth above. On appeal the State contends that the court's conclusion is contradicted by the court's own findings of fact. We agree.

As support for its argument, the State cites the case of *State v. Sanders*, 112 N.C. App. 477, 435 S.E.2d 842 (1993). In *Sanders*, this

Court concluded that the defendant's fourth amendment rights were not violated following his being stopped at a driver's license check where there were no signs warning the public that a license check was being conducted. The court based its conclusion in part on the following findings:

> In the case at hand, the two troopers, following guidelines established by their agency, selected a location and time during daylight hours for a license check. The troopers detained every automobile that passed through the check point, with the exception of those that came through while the officers were issuing citations to the operators of other vehicles. We can find no Fourth Amendment violation in the troopers' actions, and we overrule this assignment of error.

*Sanders*, 112 N.C. App. at 480, 435 S.E.2d at 844.

Similarly, in the present case, the court found that on 5 September 1993, Sergeant Bullock, acting shift supervisor, decided to organize a checking station, taking into consideration the likelihood of detecting persons who were violating the motor vehicle laws, the traffic conditions, the volume of traffic that would pass through the checking station, and the convenience of the public. The officers intended to stop all vehicles that approached the checking station from either direction to detect driver's license and registration violations as well as other motor vehicle violations including driving while impaired.

Following Bullock's decision, a checking station was established on Oak Grove Road at approximately 12:45 a.m. taking into account that there is a higher incidence of impaired driving on the weekend, particularly during the early morning hours. Bullock's unmarked patrol vehicle was parked in the paved median dividing the lanes of Oak Grove Road and another unmarked patrol vehicle was parked on the shoulder of Oak Grove Road. At least one of the vehicles had its blue lights on in accordance with Directive 63.

Defendant drove his vehicle to the checking station where he was stopped and asked to produce his driver's license and registration. Bullock noticed that defendant's eyes were glassy and bloodshot and he detected the odor of alcohol. When asked how much he had to drink, defendant responded, "none." Thereafter, another officer took over the investigation and defendant was later charged with driving while impaired. There is no evidence or finding that the checking sta-

tion was not noticeable, resulted in any unusual delay for defendant or other motorists, created any unsafe condition(s) or was otherwise unreasonable.

Upon careful review of the evidence, we find that the court's findings do not support its conclusion that the checking station was not conducted in accordance with required guidelines. Instead, the findings show that there was substantial compliance with N.C. Gen. Stat. § 20-16.3A and Directive 63. Accordingly, we find no fourth amendment violation and we reverse the trial court's order granting defendant's motion to suppress.

Reversed.

Judges GREENE and MARTIN, JOHN C. concur.