STATE OF NORTH CAROLINA v. DREW ALLEN TARLTON, JR.

No. COA00-761

(Filed 2 October 2001)

**1. Search and Seizure— driver's license checkpoint—findings—supported by evidence**

The trial court did not err in an impaired driving prosecution by denying defendant's motion to suppress evidence obtained as a result of a driver's license checkpoint where there was evidence to support the trial court's findings that the troopers were aware of the Highway Patrol policies for driver's license checks, that they called a supervisor who gave them permission, that the roadblock was conducted with patrol vehicles with blue lights operating, and that they checked every vehicle in both directions except when they were writing citations.

**2. Appeal and Error— preservation of issues—hearsay—no objection—same information on cross-examination**

The defendant in an impaired driving prosecution waived any hearsay objection to testimony that a Highway Patrol supervisor had approved a license checkpoint where defendant did not object and elicited the same information on cross-examination.

**3. Search and Seizure— driver's license checkpoints—requirements**

There is no constitutional mandate requiring law enforcement officers to obtain permission from a supervising officer before conducting a driver's license checkpoint; furthermore, written guidelines are not required and the legislature did not intend for N.C.G.S. § 20-16.3A to apply to all license checks.

Appeal by defendant from judgment entered 22 March 2000 by Judge Orlando Hudson in Orange County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Loftin and Loftin, by John D..Loftin; and Martin & Martin, by J. Matthew Martin, for the defendant-appellant.*

BIGGS, Judge.

This appeal arises from the trial court's denial of defendant's motion to suppress evidence obtained as a result of a license checkpoint stop. Based on the reasoning stated herein, we affirm the decision of the trial court.

On 9 April 1999, Troopers Kubas and Slemenda of the North Carolina State Highway Patrol conducted a driver's license checkpoint on Orange Grove Road in Orange County. Drew Allen Tarlton (defendant) was stopped at the checkpoint and Trooper Kubas (Kubas) checked his license and registration. While doing so, Kubas noticed that defendant had a "mild odor of alcohol about him." Kubas asked defendant to step out of his vehicle in order to further investigate the odor. At that time, Kubas noticed that defendant's eyes were "red and glassy." When defendant failed to properly say his alphabets as requested, Kubas administered an Alcosensor test which indicated that defendant was impaired. Defendant was subsequently charged with driving while impaired in violation of N.C.G.S. § 20-138.1 (1999).

On 6 January 2000, in Orange County District Court, defendant was found guilty of driving while impaired. He appealed to the Orange County Superior Court, and on 20 March 2000, filed a motion to suppress evidence obtained pursuant to the license checkpoint stop alleging that the checkpoint was unconstitutional. The trial court denied his motion. Reserving his right to appeal, defendant pled guilty to the charge of driving while impaired.

[1] In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence obtained as a result of his stop and detention by the troopers in that the troopers did not follow the proper procedures mandated in the wake of *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660 (1979). Defendant maintains that the State failed to prove the constitutionality of the checkpoint because there was no competent evidence that the officers had obtained authorization from a supervisor and the written policy by which the checkpoint was conducted was not admitted into evidence. We disagree.

In *Delaware v. Prouse*, the United States Supreme Court held that random stops of vehicles by law enforcement officers to check for licenses and registrations violate the Fourth Amendment. *Prouse*, 440

U.S. at 663, 59 L. Ed. 2d at 673; *See also, United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L. Ed. 2d 607 (1975); *State v. Grooms*, 126 N.C. App. 88, 483 S.E.2d 445 (1997). To withstand constitutional scrutiny, such stops must be supported by at least "articulable and reasonable" suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or occupant is otherwise subject to seizure for violation of the law. *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673. The Court in *Prouse* reasoned:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations—or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered—we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

*Prouse*, 440 U.S. at 661, 59 L. Ed. 2d at 672 (citation omitted).

Notwithstanding, the Court in *Prouse*, held that an investigative stop at a traffic check is constitutional, without the need to find reasonable suspicion, if law enforcement systematically stops all oncoming traffic. *Id.*; *See also State v. Pulliam*, 139 N.C. App. 437, 440, 533 S.E.2d 280, 283 (2000). The Court further stated that nothing in its holding precluded states from developing methods for "spot checks that . . . do not involve the unconstrained exercise of discretion." *Prouse*, 440 U.S. at 663-64, 59 L. Ed. 2d at 673.

In the wake of *Prouse*, this Court has consistently upheld roadblock-type stops where every car passing through the roadblocks is stopped. *See State v. Sanders*, 112 N.C. App. 477, 480, 435 S.E.2d 842, 844 (1993) (troopers, following guidelines established by their agency, selected a location and time during daylight hours for a license check and detained every vehicle passing through the checkpoint); *State v. Barnes*, 123 N.C. App. 144, 145-46, 472 S.E.2d 784, 785 (1996) (roadblock at highway patrol checking station was permissible under the Fourth Amendment where the troopers detained every automobile that passed through the checkpoint); *Grooms*, 126 N.C. App. at 90, 483 S.E.2d at 446 (roadblock was constitutional where

every vehicle crossing through a specified point of the roadblock was stopped for the purpose of locating people who had outstanding arrest warrants, making a license check of the operators of the vehicles passing by, and checking for stolen vehicles).

Defendant correctly asserts that in a suppression hearing, the State has the burden to demonstrate the admissibility of the challenged evidence. *State v. Harvey*, 78 N.C. App. 235, 237, 336 S.E.2d 857, 859 (1985). In the case *sub judice*, defendant challenged the admission of the evidence obtained pursuant to the checkpoint stop. The State had the burden to demonstrate that the checkpoint stop was valid. The trial court found that the State had met its burden and the checkpoint in the present case was constitutional.

In reviewing the trial court's ruling on a suppression motion, we determine only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law. *State v. Braxton*, 344 N.C. 702, 709, 477 S.E.2d 172, 176 (1996); *Pulliam*, 139 N.C. App. at 439-40, 533 S.E.2d. at 282. If findings of fact support the court's conclusions of law, the conclusions are binding on appeal. *Grooms*, 126 N.C. App. at 90, 483 S.E.2d at 446 (citation omitted).

In the case *sub judice*, the trial court made the following pertinent findings of fact:

- That on the date and time . . . Troopers Kubas and Slemenda were on preventive patrol, which is regular patrol in the community.

- That they had made up their minds to do a license check in the Orange Grove Road area in Orange County, but had not yet received permission to do so from their supervisor.

- That both troopers were aware that the North Carolina Highway Patrol had established policies for driver's license checks, that Kubas believed that policy required the check to be conducted by at least two troopers, by a non-random method, and it required a blue light on a vehicle at the time. That the policy did not require the on site presence of the supervisor.

- Kubas called his supervisor, who gave him permission to do the license check on Orange Grove Road, to be completed before dark.

STATE v. TARLTON

[146 N.C. App. 417 (2001)]

- That Troopers Kubas and Slemenda conducted the road-block on April 9, 1999 in the daylight. They positioned their patrol vehicles so that the blue lights were operating on both vehicles.

- That they checked every vehicle in both directions except when they were writing citations.

We find that these findings of fact were supported by competent evidence in the record.

[2] The defendant argues that the finding by the court that Kubas was given permission by a supervisor is based on inadmissible hearsay and further that its admission was prejudicial error. We find that defendant has waived any objection to this testimony.

It is well settled that a defendant waives objection to the admission of testimony when testimony of the same import is admitted without objection. *State v. Ayers*, 92 N.C. App. 364, 366, 374 S.E.2d 428, 429 (1988) (citation omitted); *See also State v. Oliver*, 309 N.C. 326, 334, 307 S.E.2d 304, 311 (1983) (citations omitted). Not only did the defendant allow evidence that the troopers received permission from the supervisor on direct examination without objection; his attorney's questioning of Kubas on cross-examination elicited the same information in greater detail.

First defendant allowed the trooper to testify as follows without objection:

Myself and Trooper Slemenda were on preventive patrol, and determined we would like to hold a checking station, so [we] contacted our supervisor and determined to see if it would be all right with him to check driver's licenses.

It was later when the following exchange occurred that the defendant objected:

Q. When you contacted your supervisor, what did you do as a result of that conversation?

A. I spoke with him and asked him if it would be all right if we checked driver's licenses, and he asked which spot—

MR. LOFTIN: Objection.

THE COURT: Overruled.

STATE v. TARLTON

[146 N.C. App. 417 (2001)]

Moreover, the defendant on cross examination asked the following:

Q. And you don't know who the supervising officer was that you purportedly called to get permission to do this license check?

A. No, sir. They rotate shifts as well as us, so it's common for a supervisor not to be on the same shift as you at all times.

Q. To the best of your knowledge, did the guidelines that were in effect on April 9, 1999 require a supervising officer to be present at the license check?

A. No, sir.

. . . .

Q. So tell me the conversation, the complete conversation that you had with this supervising officer.

A. I—I can't recall exactly what the words were. We asked him for permission to check driver's licenses, and they usually ask when and where, and then they okay it or deny it.

We conclude that defendant has waived his right to contest this testimony on appeal.

[3] Assuming *arguendo* that the trial court did err in allowing Trooper Kubas' testimony regarding supervisory permission, we find that such error is harmless. There is no constitutional mandate requiring officers to obtain permission from a supervising officer before conducting a driver's license checkpoint. Neither the holding in *Prouse*, which addresses the constitutionality of license checks, nor this Court's holding on license checks, require such permission. *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673; *Sanders*, 112 N.C. App. at 480, 435 S.E.2d at 844. Further, we do not agree with the contention that the State's failure to introduce the Highway Patrol guidelines into evidence required the court to find the stop unconstitutional. While the Supreme Court in *Prouse* stated that its "holding does not preclude [states] from developing [systematic plans] for spotchecks", there is nothing in *Prouse* or subsequent cases of this Court that require written guidelines to conduct such license checks. *Prouse*, 440 U.S. at 673, 59 L. Ed. 2d at 673. Finally, defendant's contention that this license check is governed by N.C.G.S. § 20-16.3A (1999) is incorrect. The following language of this section makes clear that the legislature did not intend for it to cover all license checks:

This section does not limit the authority of a law-enforcement officer or agency to conduct a license check independently or in conjunction with the impaired driving check, to administer psychophysical tests to screen for impairment, or to utilize roadblocks or other types of vehicle checks or checkpoints that are consistent with the laws of this State and the Constitution of North Carolina and of the United States.

G.S. § 20-16.3A.

Accordingly, we find that the trial court properly denied defendant's motion to suppress.

Having established that supervisory approval for a license checkpoint is not a constitutional requirement, nor is a written plan, we decline to address the remaining assignments of error.

Affirmed.

Judges WYNN and CAMPBELL concur.