STATE OF NORTH CAROLINA, Plaintiff v. MICHAEL DALTON COLBERT, Defendant

No. COA00-715

(Filed 16 October 2001)

**1. Evidence— motion to suppress—grounds—other than stated in motion**

The trial court did not err by granting defendant's motion to suppress evidence obtained during an impaired driving checkpoint on grounds other than those stated in the motion. N.C.G.S. § 15A-977(c) provides that the judge may summarily deny a motion that does not allege a legal basis; the decision is vested in the discretion of the trial court and, once the court decides not to dismiss the motion but to have a hearing, it may base its conclusion on grounds other than those set forth in the motion.

**2. Motor Vehicles— impaired driving checkpoint—validity of plan—screening procedure**

The trial court erred by dismissing evidence gained from an impaired driving checkpoint on the grounds that it did not meet the requirement of N.C.G.S. § 20-16.3A in that it did not designate in advance the pattern for requesting that drivers be stopped to submit to screening tests. The plan required that every vehicle be stopped, that every driver be administered a series of alcohol screening procedures such as engaging the driver in conversation, and that a driver would be taken to a second location for the alco-sensor test only if there was a reasonable and articulable suspicion of impairment. The fact that an officer must make a judgment as to whether there is reasonable and articulable suspicion does not vitiate the validity of the plan nor offend the requirement that officers not be permitted unbridled discretion.

**3. Motor Vehicles— impaired driving checkpoint—officers observing defendant and making arrest**

There is nothing in the impaired driving checkpoint statute or case law to support the argument that the officer who observed defendant in his vehicle must be the officer who performs the alcohol screening test and makes the arrest, or that the officers observing defendant, administering the screening test, and arresting defendant must be members of the agency which made the plan for the checkpoint.

STATE v. COLBERT

[146 N.C. App. 506 (2001)]

Appeal by the State from judgment entered 11 January 2000 by Judge Narley L. Cashwell in Granville County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III and Patricia A. Duffy, Assistant Attorney General, for the State.*

*Currin & Dutra, LLP, by Thomas L. Currin, for defendant.*

BIGGS, Judge.

The State appeals the trial court's grant of defendant's motion to suppress evidence obtained during an impaired driving checkpoint stop. The trial court ruled that the checkpoint did not comply with N.C.G.S. § 20-16.3A(2) (1999) in that the agency conducting the check failed to designate, in advance, a pattern for requesting drivers to submit to alcohol screening tests. We disagree and reverse the trial court.

On 6 July 1998, the Senior Public Safety Officer of the Butner Public Safety Department sent a letter to several law enforcement agencies requesting their participation in an impaired driving checkpoint operation scheduled for 18 July 1998. The letter requested the participation of eight organizations including: Butner Public Safety personnel, the Granville County Sheriff's Office, the North Carolina Highway Patrol, the Oxford Police Department, and the Creedmoor Police Department, to name a few. Attached to the letter was a memorandum from Rufus Sales (Sales), Chief of Butner Public Safety Department, setting forth the guidelines for carrying out this operation (hereinafter, Butner Plan). According to the memorandum, on 18 July 1998, two impaired driving checkpoints would be set up, one on Highway 56 and the other in another location. Each site would have a Breath Alcohol Testing Mobile Unit.

On 18 July 1998, defendant, while traveling on Highway 56, approached one of the impaired driving checkpoints set up pursuant to the 6 July 1998 letter and was stopped by Sergeant Rose of the North Carolina Highway Patrol. Sergeant Rose performed the following screening of the defendant: (1) requested defendant to produce his driver's license, (2) observed the defendant's eyes for signs of impairment, (3) engaged the defendant in conversation to determine if the defendant had the odor of alcohol on his breath or if his speech pattern indicated impairment, and (4) observed the defend-

ant's clothing. Following these initial observations, Sergeant Rose instructed Trooper McMillan, who had also observed the defendant operate the vehicle, to take the defendant for further alcohol screening. Trooper McMillan conducted an alco-sensor test on the defendant and based on the results of the test, he placed the defendant under arrest for impaired driving and cited him for other driving violations. Sergeant Rose did not participate in the administration of the alco-sensor test or arrest.

On 9 November 1999, the defendant filed a motion to suppress the evidence obtained during the stop. A hearing on the motion to suppress took place in Superior Court in Granville County on 3 March 2000. The trial court granted defendant's motion to suppress, concluding that the agency failed to designate in advance the pattern for requesting drivers that are stopped to submit to alcohol screening tests which was required by G.S. § 20-16.3A(2).

I.

[1] The State first assigns as error the trial court's grant of defendant's motion to suppress on a ground other than the grounds specifically raised by defendant in his motion. The State argues that the issue of "whether the checkpoint complied with N.C.G.S. § 20-16.3A(2) was not raised in defendant's motion to suppress and is therefore barred on appellate review." We disagree.

The standards governing motions to suppress are set forth in Chapter 15A of the North Carolina General Statutes. There are two provisions which are relevant to this discussion. First, N.C.G.S. § 15A-977(a) (1999) provides that "[t]he motion to suppress must state the grounds upon which it is made." Section 15A-977(c) provides "[t]he judge *may* summarily deny the motion to suppress evidence if . . . the motion does not allege a legal basis for the motion[.]" "[T]he decision to deny summarily a motion which fails to set forth adequate legal grounds is vested in the sound discretion of the trial court." *State v. Harvey*, 78 N.C. App. 235, 237, 336 S.E.2d 857, 859 (1985). Once the trial court decides not to dismiss the motion but rather to have a hearing, the court may base its conclusion on grounds other than those set forth in the motion. *Id.*

In the case *sub judice*, defendant's motion set forth the following grounds as a basis to suppress evidence obtained following his stop: that (1) the stop was not conducted by "an agency" within the

STATE v. COLBERT

[146 N.C. App. 506 (2001)]

meaning of G.S. § 20-16.3A and (2) the stop did not comply with provisions as set forth in the 6 July 1998 memorandum. The State argues that since the court granted the motion to suppress on the ground that "the agency failed to designate in advance the pattern for requesting drivers that are stopped to submit to alcohol screening tests" that the court's decision should be reversed. We find no support for this argument.

In *State v. Harvey*, the Court was asked to consider whether the trial judge properly considered grounds for the suppression motion which were not contained in the motion itself. *Harvey*, 78 N.C. App. at 237, 336 S.E.2d at 859. This Court upheld the trial court where the motion to suppress filed by the defendant raised the issue of voluntariness of a confession; however, the trial court granted the motion to suppress on the grounds that defendant had not been given his Miranda rights. *Id.* at 235, 336 S.E.2d at 857.

While G.S. § 15A-977(c) and this Court in *Harvey* make clear that the court in this case may have had the authority to dismiss the motion, there is nothing that requires it to do so. Once the court, in its discretion, moves forward with a hearing it must set forth findings of fact and conclusions of law based on the evidence presented. Accordingly, this assignment is overruled.

II.

[2] The State next contends that the trial court erred in granting defendant's motion to suppress on the basis that the Butner Plan failed to meet the requirement of G.S. § 20-16.3A (2) in that it did not designate in advance the pattern for requesting drivers that are stopped to submit to alcohol screening tests. We agree.

G.S. § 20-16.3A which governs the establishment, organization and management of impaired driving checkpoints provides in pertinent part:

A law-enforcement agency may make impaired driving checks of drivers of vehicles on highways and public vehicular areas if the agency:

. . . .

(2) **Designates in advance the pattern both for stopping vehicles and for requesting . . . screening tests . . .** but no individual officer may be given discretion as to which vehicle is

stopped or, of the vehicles stopped, which driver is requested to submit to an alcohol screening test.

G.S. § 20-16.3A.

Defendant contends, and the trial court, found that while the Butner Plan did designate in advance a pattern for stopping vehicles, *i.e.*, every car was to be stopped; it did not designate in advance a pattern for requesting alcohol screening tests. In its Order Allowing the Motion to Suppress, the trial court made the following findings with respect to the Butner Plan:

> 2. C. Subparagraph D of the memorandum provided "every vehicle is to be stopped. If traffic conditions create a hazard the Captain in charge may temporarily alter this pattern. The officers conducting the check may not vary from the pattern otherwise."
>
> D. Subparagraph E of the memorandum provided "the Officer stopping the vehicle, in every case will perform only the following screening: 1. Request the driver to produce a driver's license. 2. To observe the driver's eyes for signs of impairment. 3. Engage the driver in conversation to determine if the driver has an odor of alcohol on his or her breath or if his or her speech pattern indicates possible impairment. 4. Observe the driver's clothing."
>
> E. Thereafter, the memorandum provided "if, after the driver submits to this screening test, the officer forms a reasonable and articulate (sic) suspicion based on the above test, that the driver is impaired or has otherwise committed a violation of law, the officer will take the driver to a secondary location for further tests or observation which may aid the officer in determining probable cause."
>
> F. The memorandum provided "the alco-sensor will only be used after the officer has formed and (sic) articulable and reasonable suspicion that the driver has committed an implied consent offense."

The trial court concluded that the Butner Plan did not comply with G.S. § 20-16.3A(2) in that it did not designate in advance the pattern for "requesting drivers that are stopped to submit to alcohol screening tests". Further, the court concluded:

[t]hat to the extent that the procedures and directives set out in the memorandum designated a "pattern" for requesting drivers that are stopped to submit to alcohol screening tests then such pattern gave individual officers discretion as to which driver was requested to submit to an alcohol screening test within the meaning of 20-16.3A in violation of the specific provision of that subsection prohibiting such discretion.

In reviewing the trial court's ruling on a motion to suppress, we determine only whether the trial court's findings of fact are supported by competent evidence in the record, and whether these findings of fact support the court's conclusions of law. *State v. Pulliam*, 139 N.C. App. 437, 439-40, 533 S.E.2d. 280, 282 (2000). We find that the trial court's conclusions in the case *sub judice* are not supported by the court's findings and the law governing impaired driving checkpoint stops.

The United States Supreme Court in *Michigan State Police v. Sitz* upheld a sobriety checkpoint program similar to the plan in the present case. 496 U.S. 444, 447, 110 L. Ed. 2d 412, 418 (1990). Under the program in *Sitz*, checkpoints would be set up at selected locations. *Id.* All vehicles passing through a checkpoint would be stopped and drivers briefly examined for signs of intoxication. *Id.* In cases where a checkpoint officer detected signs of intoxication, the driver was directed to a location where the motorist's driver's license and car registration were investigated and, if warranted, further sobriety tests were conducted. *Id.* Finally, if the subsequent tests indicated that the driver was impaired, an arrest would be made. *Id.* Law abiding drivers were allowed to resume traveling after the initial screening. *Id.*

The Court in *Sitz* applied a three-prong balancing test to determine whether this sobriety checkpoint plan, would survive constitutional muster. The Court "balanc[ed] the state's interest in preventing accidents caused by drunk drivers, the effectiveness of sobriety checkpoints in achieving that goal, and the level of intrusion on an individual's privacy caused by the checkpoints." *Sitz*, 496 U.S. at 449, 110 L. Ed. 2d at 419.

The Court concluded that the Michigan checkpoint program was constitutional. It found that the State had a significant interest in preventing accidents caused by drunk drivers and that the checkpoint plan would be effective in achieving that goal. Moreover, the court found that the intrusion upon motorists stopped briefly at sobriety

checkpoints is slight. *Sitz*, 496 U.S. at 451, 110 L. Ed. 2d at 421. The Supreme Court was careful to limit its holding to the initial stop of each motorist passing through the checkpoint and the associated preliminary questioning and observation by checkpoint officers. The Court acknowledged that "[d]etection of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard[.]" *Sitz*, 496 U.S. at 451, 110 L. Ed. 2d at 420.

Moreover this Court in *State v. Barnes*, 123 N.C. App. 144, 472 S.E.2d 784 (1996), upheld a similar checkpoint stop. In that case, defendant drove his vehicle to the checking station where he was stopped, along with all other motorists passing through the checkpoint, and asked to produce his driver's license and registration. The officer noticed that defendant's eyes were glassy and bloodshot and he detected the odor of alcohol. When asked how much he had to drink, defendant responded, "none." Thereafter, another officer took over the investigation and defendant was later charged with driving while impaired. This Court in reversing the trial court and upholding the stop stated "[t]here is no evidence or finding that the checking station . . . resulted in any unusual delay for defendant or other motorists, created any unsafe condition(s) or was otherwise unreasonable." *Barnes*, 123 N.C. App. at 146-47, 472 S.E.2d at 785.

In the case *sub judice*, the Butner Plan requires that: 1) every vehicle driving through the checkpoint be stopped; 2) every driver be administered a series of alcohol screening procedures as set forth in the trial court's finding #2D; and 3) only if there is reasonable and articulable suspicion of impairment is the driver then taken to a second location for administration of a alco-sensor test. We agree with the State that the fact that an officer must make a judgment as to whether there is a reasonable and articulable suspicion does not vitiate the validity of the plan nor offend the requirement that individual officers not be permitted to exercise unbridled discretion under G.S. § 20-16.3A(2).

Another pertinent provision of G.S. § 20-16.3A that supports the legality of the Butner Plan is as follows:

This section does not prevent an officer from using the authority of G.S. § 20-16.3 to request a screening test if, in the course of dealing with a driver under the authority of this section, he develops grounds for requesting such a test under G.S. § 20-16.3.

STATE v. COLBERT

[146 N.C. App. 506 (2001)]

Further, G.S. § 20-16.3 provides, in pertinent part, that:

A law-enforcement officer may require the driver of a vehicle to submit to an alcohol screening test . . . if the officer has:

. . . .

(2) An articulable and reasonable suspicion that the driver has committed an implied-consent offense under G.S. 20-16.2, and the driver has been lawfully stopped for a driver's license check or otherwise lawfully stopped or lawfully encountered by the officer in the course of the performance of the officer's duties.

The Butner Plan has incorporated the essence of these statutory provisions into its plan. The trial court appears to have accepted defendant's argument that because the Butner Plan did not require "every driver" or "every tenth driver" or "every driver with the odor of alcohol about his person" to submit to the alco-sensor test, the plan did not comply with G.S. § 20-16.3A(2). This is reflected in the following statement by the court:

Again, my concern is that the pattern for stopping vehicles and there must be also a pattern for asking drivers to submit to alcohol screening tests. I don't necessarily know that it has to be by vehicle. I mean, I would assume that the pattern for stopping vehicles could be, we are going to stop every vehicle and we are going to ask every third vehicle or every fifth vehicle, the driver of that vehicle, without regard to whether or not we have any articulable and reasonable suspicion, we are simply going to ask them to take a test, take an alco-sensor test or whatever alcohol screening test we designate.

So, we are going—we stop every vehicle, but every third or every fifth or whatever their number decision was, we are going to ask that driver, doesn't matter period, because if we do it that way, we have met the constitutional requirements. Okay.

But they could have also said, perhaps, again, we are going to stop every vehicle, but every driver who has the odor of alcohol on his breath will be asked to take an alco-sensor test. That would also be a pattern.

It would appear that the trial court believed that the alcohol screening test referred to in G.S. § 20-16.3A(2) refers only to the administration of the alco-sensor test. We find that the alcohol screening procedure outlined in the trial court's finding #2D (which

is administered to every driver passing through the checkpoint), and the administration of the alco-sensor test to those where the officer has a reasonable and articulable suspicion is a pattern designated in advance for requesting drivers that are stopped to submit to alcohol screening tests as required by G.S. § 20-16.3A(2).

To allow a pattern as contemplated by the trial court would violate the third prong of the balancing test as set forth in *Sitz* in that it would be far more intrusive to require every driver or every third driver, irrespective of evidence of intoxication, to be administered an alco-sensor test. Taking this position to its logical conclusion, the following scenario would be possible: A checkpoint is set up and the advance pattern designated in the checkpoint plan could require that every third driver be administered an alco-sensor. An officer at the checkpoint could have a reasonable and articulable suspicion that the driver of car #2 is impaired. The officer, under the plan, would be required to ignore obvious signs of impairment and allow the impaired driver through the checkpoint. We think not. We find this interpretation of G.S. § 20-16.3A and the supporting case law erroneous. The Butner Plan is clearly reasonable and does not allow unbridled discretion of the officer as contemplated by *Sitz*. *See also Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660 (1979), (the Court recognized that states should be permitted to develop methods for spot checks that involve less intrusion or.that do not involve the unconstrained exercise of discretion). Accordingly, we conclude that the Butner Plan is constitutionally permissible and comports with G.S. § 20-16.3A.

Having established that the Butner Plan is constitutionally permissible, we find no need to address the State's other assignments of error.

**[3]** Defendant sets forth two cross assignments of error pursuant to Rule 10(d) of the N.C. Rules of Appellate Procedure. He contends that the trial court erred in concluding that evidence from the stop was not required to be suppressed on the following grounds:

1) . . . That the officer who observed the defendant in his vehicle was not the same officer who performed the alcohol screening test and who determined the probable cause to arrest.

2) . . . That each of the officers who actually observed the defendant, administered the alcohol screening test and arrested the defendant were members of a law enforcement agency other

. than the agency which made the plan for the impaired driving check on vehicles.

We note that the defendant cites no authority for these arguments. Moreover, we find nothing in the impaired driving checkpoint statute or case law to support these arguments. We agree with the trial court that even if these contentions are true, they do not require suppression of the evidence obtained as a result of the stop.

Accordingly, we overrule defendant's cross assignments.

Reversed.

Judges WYNN and CAMPBELL concur.