STATE OF NORTH CAROLINA v. DAVID ERIC MITCHELL

No. COA02-82

(Filed 19 November 2002)

**Motor Vehicles; Search and Seizure— stop and arrest—random driver's license checkpoint**

The trial court erred in an impaired driving case by granting defendant's motion to suppress evidence of his stop and arrest based on defendant's driving through a random driver's license

checkpoint because even though there was no evidence of a written plan adopted by the pertinent police department relative to license checkpoints and the pertinent officer had standing permission to establish the checkpoint, the State met its burden of showing the random license check was not an unreasonable detention when uncontroverted evidence demonstrated that all westbound traffic on U.S. 29/74 was stopped and checked for licenses and registrations.

Appeal by the State from order dated 17 October 2001 by Judge Marcus L. Johnson in Gaston County Superior Court. Heard in the Court of Appeals 15 October 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Patricia A. Duffy, for the State.*

*Legal Foundation, Inc., by Seth H. Jaffe, for defendant appellee.*

GREENE, Judge.

The State appeals from a 17 October 2001 order granting a motion to suppress the stopping and arrest of David Eric Mitchell (Defendant).

At a 17 October 2001 hearing, the evidence tended to show Officer Boyce Falls (Officer Falls), a traffic officer with the Belmont Police Department, was working during the early morning hours of 6 February 2000. Officer Falls decided to set up a "random license check" on Highway U.S. 29/74 to check oncoming traffic for valid licenses and registrations. He informed his shift sergeant of his decision and asked two other officers to join him. Between 3:30 and 4:00 a.m., the three officers positioned themselves at the location designated by Officer Falls and conducted a license and registration check of every westbound vehicle. At approximately 4:15 a.m., Defendant, headed westbound on U.S. 29/74, approached the checkpoint. Defendant was motioned to stop by Officer Falls but continued to drive through the checkpoint. Officer Falls pursued Defendant for a mile and a half beyond the checkpoint before Defendant stopped. Defendant was subsequently arrested and charged with impaired driving "solely as a result of this road check."

Officer Falls testified he had "standing permission" from his captain to set up "random license checks." He further testified at least

three officers are required to conduct these license checks, although a total of six officers would be required to conduct a license check on both sides of U.S. 29/74. Officer Falls had checked beforehand with his shift sergeant only "to make sure he had the manpower." Officer Falls was permitted to determine where and when the checkpoints were placed and how long they lasted. He stated the checkpoints usually lasted less than one hour. The police department had no written guidelines or procedures for checkpoints, but officers in training were instructed to: select a safe location, have activated their patrol cars' "blue lights," wear orange reflective vests, and direct traffic using their flashlights. Officer Falls also testified a random license check is different from a driving while impaired checkpoint because a driving while impaired checkpoint requires a plan.

Captain William Jonas, the operations captain for the Belmont Police Department, testified he was responsible for the training and supervision of Officer Falls. He further stated officers are given responsibility to set up license checkpoints when they deem it necessary and that the checkpoints are "random stops to enforce such laws as no operator's license, child restraint enforcement, seat belt enforcement, numerous charges." Officers did not have to get any authorization to conduct random license checks. It, however, was necessary for officers "to be aware that every car must be stopped."

The trial court found as fact Defendant's "stop and subsequent charges were as a direct result of the roadblock or checking station." The court also found Officer Falls had (1) standing permission to establish the checkpoint and (2) authority to decide what type of checkpoint would be established, the time it was to begin, how long it would last, where it would be established, which traffic would be stopped, and the procedures for setting up the checkpoint. Based on these findings, the trial court made the following conclusion of law:

> 2. That the Belmont Police Department delegated all authority to Officer Falls to decide in his own discretion when to set up a check point, where to set up the check point, and what type of check point was to be conducted, and thereby gave Officer Falls unbridled and unrestrained discretion in these matters. This delegation of authority to Officer Falls is clearly unconstitutional and violates the United States and North Carolina Constitutions.

STATE v. MITCHELL

[154 N.C. App. 186 (2002)]

The issue is whether a law enforcement officer may lawfully establish a license checkpoint (systematic stopping of motor vehicles to determine if the operator has a valid driver license) when the officer does not have prior supervisory approval and/or when there is no written plan in place at the law enforcement agency setting out criteria for the establishment and operation of the checkpoint.

The Fourth Amendment prohibits unreasonable detentions. *See Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673 (1979); *see also* U.S. Const. amend. IV. A random stop of the operator of a motor vehicle without at least "articulable and reasonable suspicion" the operator has committed some violation of law is an unreasonable detention. *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673. The stopping of a motor vehicle at a license checkpoint, however, does not constitute an unreasonable detention of its operator if "all oncoming traffic" is stopped. *Id.* at 663, 59 L. Ed. 2d at 673-74. This is so without regard to whether the officer conducting the checkpoint has received approval from a supervisor or whether the law enforcement agency has a written plan in effect with respect to establishing and conducting these checkpoints.[1] *See State v. VanCamp*, 150 N.C. App. 347, ——, 562 S.E.2d 921, 925 (2002); *State v. Briggs*, 140 N.C. App. 484, 486-87, 536 S.E.2d 858, 859-60 (2000); *State v. Pulliam*, 139 N.C. App. 437, 440, 533 S.E.2d 280, 283 (2000); *State v. Grooms*, 126 N.C. App. 88, 90, 483 S.E.2d 445, 446 (1997). When not all the vehicles are stopped, there is nonetheless no constitutional violation if the checkpoint is conducted pursuant to a written plan, duly adopted by the law enforcement agency, setting out the criteria for the establishment and operation of the checkpoint. *See, e.g., Sanders*, 112 N.C. App. at 480, 435 S.E.2d at 844.

In this case, uncontroverted evidence demonstrates all westbound traffic on U.S. 29/74 was stopped and checked for licenses and registrations. Thus, even though there is no evidence of a written plan adopted by the Belmont Police Department relative to licence checkpoints, the State met its burden of showing the random license check was not an unreasonable detention and therefore was valid under the

---

1. This Court has noted that the constitutionality of the stops is not affected even if all vehicles are not stopped, provided the officers conducting the stops were actively engaged in issuing citations for violations. *See State v. Colbert*, 146 N.C. App. 506, 512-14, 553 S.E.2d 221, 225-26 (2001); *State v. Tarlton*, 146 N.C. App. 417, 420-21, 553 S.E.2d 50, 53-54 (2001); *State v. Barnes*, 123 N.C. App. 144, 145-56, 472 S.E.2d 784, 784-85 (1996); *State v. Sanders*, 112 N.C. App. 477, 480, 435 S.E.2d 842, 844 (1993). In those cases, however, the officers were conducting the checkpoint pursuant to a written plan adopted by the appropriate law enforcement agency.

Fourth Amendment.[2] *See Tarlton*, 146 N.C. App. at 420, 553 S.E.2d at 53 (burden is on the State to show validity of a checkpoint). Accordingly, the trial court erred in suppressing evidence of Defendant's stop and arrest.

Reversed.

Judges MARTIN and BRYANT concur.

---

2. Defendant does not argue the random license check at issue in this case was a pretext for a driving while impaired checkpoint in an attempt to circumvent Section 20-16.3 of the General Statutes. *See* N.C.G.S. § 20-16.3 (2001) (mandatory procedures for the establishment of a driving while impaired checkpoint); *see also State v. Hamilton*, 125 N.C. App. 396, 399-400, 481 S.E.2d 98, 100 (1997) (the police may use a detention for a traffic violation as a pretext for further investigation of criminal activity if there is probable cause a traffic violation occurred). Further, Defendant does not argue this random license check violated the North Carolina Constitution. Accordingly, we do not address these issues.