An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-702

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

    v.

SCOTT WESLEY FARRIS,
        Defendant.

Burke County
No. 11 CRS 52086

Appeal by defendant from judgment entered 4 December 2012 by Judge Nathaniel J. Poovey in Burke County Superior Court. Heard in the Court of Appeals 21 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Carrie D. Randa, for the State.*
>
> *Wayne O. Clontz for defendant-appellant.*

GEER, Judge.

Defendant Scott Wesley Farris appeals from his conviction of driving while impaired. On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence obtained during a checkpoint stop. He primarily argues that the checkpoint was unreasonable because, according to defendant, at least one vehicle was able to drive through the checkpoint without being stopped. Because, however, the trial court's

findings are supported by competent evidence and those findings support the court's conclusion that the primary programmatic purpose of the checkpoint was proper and the checkpoint was reasonable, we hold that the trial court did not err in denying defendant's motion to suppress.

## Facts

The State's evidence tended to show the following facts. Beginning around 9:00 p.m. on the evening of 14 July 2011, five members of the North Carolina State Highway Patrol conducted a checkpoint on the I-40 Westbound off-ramp at exit 103 in Morganton, North Carolina. Three Highway Patrol vehicles were parked at the intersection at the top of the ramp and had their flashing blue lights on to alert motorists of the checkpoint. The stoplights at the intersection at the end of the off-ramp and the flashing lights of the police cars were not, however, visible to drivers when they first entered the off-ramp due to a slight curve in the ramp.

Sergeant Mark Cline, the supervisor on scene, had chosen the time and location of the checkpoint. The checkpoint was conducted within the written guidelines of the Highway Patrol and also complied with a standing order from the captain requiring that a supervisor be on site at all times during nighttime checkpoints. Each car that came through the

checkpoint was required to show a valid driver's license, registration, and proof of insurance. The officers did not have any discretion as to which vehicles they stopped, but rather all cars were supposed to be stopped.

Around 9:45 p.m., defendant approached the checkpoint in a Ford Ranger pickup truck. Trooper Jason Goudelock asked defendant for his driver's license and registration and immediately smelled a strong odor of alcohol coming from the vehicle. He also noticed that defendant's eyes were glassy. Trooper Goudelock asked defendant to turn off the engine and step out of the truck. After observing defendant, Trooper Goudelock formed the opinion that defendant was impaired, and he arrested defendant for driving while impaired.

On 5 June 2012, the district court found defendant guilty of impaired driving. Defendant appealed to superior court, and, at a pretrial hearing, defendant made an oral motion to suppress. Although, contrary to N.C. Gen. Stat. § 15A-977 (2011), defendant did not file a written motion to suppress, the State did not object to proceeding with a hearing on the merits. After hearing the testimony of Trooper Goudelock and defendant, the trial court orally denied the motion to suppress and dictated its findings of fact and conclusions of law into the record.

Following the denial of his motion, defendant pled no contest to the charge of driving while impaired. Defendant was sentenced to an active term of 60 days imprisonment. That sentence was suspended, and defendant was placed on 18 months of supervised probation. Defendant timely appealed to this Court.

## Discussion

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Defendant contends that the trial court should have granted his motion to suppress because the checkpoint constituted an unconstitutional seizure. "'[P]olice officers effectuate a seizure when they stop a vehicle at a checkpoint. As with all seizures, checkpoints conform with the Fourth Amendment only if they are reasonable.'" *State v. Jarrett*, 203 N.C. App. 675,

677, 692 S.E.2d 420, 423 (2010) (quoting *State v. Rose*, 170 N.C. App. 284, 288, 612 S.E.2d 336, 339 (2005)). "Thus, 'police may briefly detain vehicles at a roadblock checkpoint without individualized suspicion, so long as the purpose of the checkpoint is legitimate and the checkpoint itself is reasonable.'" *Id.* (quoting *State v. Veazey*, 191 N.C. App. 181, 184, 662 S.E.2d 683, 686 (2008)).

With respect to review of the constitutionality of a checkpoint, this Court has held:

> "When considering a challenge to a checkpoint, the reviewing court must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements. First, the court must determine the primary programmatic purpose of the checkpoint. . . . Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint . . . [the court] must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances."

*Id.* (quoting *Veazey*, 191 N.C. App. at 185-86, 662 S.E.2d at 686-87). Defendant contends that the trial court erred both in concluding that the officers had a legitimate primary programmatic purpose and that the checkpoint was reasonable.

Defendant argues generally that "it was never established" that the primary programmatic purpose of the checkpoint was proper. Given the finding by the trial court that "[t]he

purpose for the license checkpoint was to check driver's license, registration, and proof of insurance[,]" it is unclear whether defendant is arguing that this finding is not supported by competent evidence in the record or that this finding is insufficient to establish that this purpose was also "primary," "programmatic," and "proper." With regard to whether the trial court's finding is supported by the evidence in the record, defendant does not point to any contrary evidence or make any specific argument that the trial court erred in making the finding. Based on our review of the record, we find that the trial court's finding regarding the purpose of the checkpoint is supported by competent evidence.

As for whether the purpose found by the trial court is proper, courts have recognized as constitutionally permissible checkpoints for the purpose of checking drivers' licenses, proof of insurance, and vehicle registration. *See, e.g.*, *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74, 99 S. Ct. 1391, 1401 (1979) (indicating that checkpoint with primary purpose of checking drivers' licenses and vehicle registrations would be permissible under the Fourth Amendment); *United States v. Brugal*, 209 F.3d 353, 357 (4th Cir. 2000) (holding that "a brief stop at a checkpoint for the limited purpose of verifying a driver's license, vehicle registration, and proof of insurance

is a reasonable intrusion into the lives of motorists and their passengers even in the absence of reasonable suspicion that a motorist or passenger is engaged in illegal activity"); *State v. Mitchell*, 358 N.C. 63, 66, 592 S.E.2d 543, 545 (2004) (driver's license checkpoint held constitutional); *State v. Tarlton*, 146 N.C. App. 417, 423, 553 S.E.2d 50, 53 (2001) (license and registration checkpoint held constitutional).

Thus, we conclude that the trial court did not err in finding that there was a proper programmatic purpose for the checkpoint. However, even if a trial court concludes that the primary programmatic purpose was lawful, the court "must still determine 'whether the checkpoint itself was reasonable.'" *Jarrett*, 203 N.C. App. at 679, 692 S.E.2d at 424 (quoting *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 689-90). This Court balances the public's interest and the individual's privacy interest by applying the three-prong test set out in *Brown v. Texas*, 443 U.S. 47, 50, 61 L. Ed. 2d 357, 361, 99 S. Ct. 2637, 2640 (1979). "Under *Brown*, the trial court must consider '[1] the gravity of the public concerns served by the seizure[;] [2] the degree to which the seizure advances the public interest[;] and [3] the severity of the interference with individual liberty.'" *Jarrett*, 203 N.C. App. at 679, 692 S.E.2d at 425 (quoting *Rose*, 170 N.C. App. at 293-94, 612 S.E.2d at 342).

Defendant argues that the stop was not reasonable because there was a factual dispute regarding whether every vehicle was, in fact, stopped.[1] The trial court found (1) that the checkpoint complied with the Highway Patrol's written policy for conducting checkpoints, (2) the checkpoint complied with the pre-designated pattern of stopping every vehicle, and (3) "[t]he officers did not have any discretion . . . as to which vehicle they stopped[.]"

Trooper Goudelock's testimony amply supported the trial court's findings. Although defendant testified that while he was stopped at the checkpoint, he witnessed one car that went through the checkpoint without being stopped, he also testified that he had been drinking that evening and that his blood alcohol level was .14. As the trier of fact, the trial judge was free to weigh the credibility of the witnesses and chose to believe Trooper Goudelock over defendant. It is beyond the scope of our review to revisit the trial court's credibility determinations.

Even assuming *arguendo* that one car was not stopped, defendant, citing only generally to this Court's decision in *Rose*, does not point to any authority suggesting that if one car

---

[1]Defendant does not articulate how this argument fits into the *Brown* analysis or allege that the trial court made insufficient findings regarding any of the three prongs of *Brown*.

is not stopped according to the pre-designated pattern, the checkpoint is invalid. Nor does defendant point to any evidence showing that the car passed as a result of a discretionary decision of any of the officers to allow the car to pass. Even if such evidence existed, officer discretion, as only one of many factors to consider, "is not a 'lynchpin,' but instead is a circumstance to be considered as part of the totality of the circumstances in examining the reasonableness of a checkpoint." *Rose*, 170 N.C. App. at 298, 612 S.E.2d at 345. The possibility that one car was able to sneak past the checkpoint is insufficient to undermine the trial court's finding that the officers did not have discretion in deciding which car to stop, much less render the entire checkpoint unreasonable. *See* *Tarlton*, 146 N.C. App. at 421, 553 S.E.2d at 53 (concluding checkpoint reasonable based in part upon trial court's finding that officers "'checked every vehicle in both directions *except when they were writing citations*'" (emphasis added)).

In conclusion, we hold that there is competent evidence to support the trial court's finding that all the vehicles were stopped. We also hold that, regardless whether one car did, in fact, pass through the checkpoint without being stopped, there is competent evidence to support the trial court's finding that the officers did not have discretion in deciding which vehicles

were stopped.  This finding, in turn, supports the trial court's conclusion that the checkpoint was constitutional.

No error.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).