STATE OF NORTH CAROLINA v. FRED GABRIEL

No. COA08-59

(Filed 2 September 2008)

**Search and Seizure— driver license checkpoint—motion to suppress—primary programmatic purpose—reasonableness**

The trial court erred in a driving while impaired and driving while license revoked case by denying defendant's motion to suppress evidence obtained at a driver license checkpoint without making findings of fact as to the primary purpose and reasonableness of the check point. Defendant's convictions are vacated and the case is remanded to the trial court for findings of fact and conclusions of law regarding the checkpoint's primary programmatic purpose. If the trial court finds the primary programmatic purpose of the checkpoint was lawful, it must also determine whether the checkpoint was reasonable based upon the individual circumstances of the case.

STATE v. GABRIEL

[192 N.C. App. 517 (2008)]

Appeal by defendant from judgments entered 3 April 2007 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 August 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Sebastian Kielmanovich, for the State.*

*Janna D. Allison, for defendant-appellant.*

TYSON, Judge.

Fred Gabriel ("defendant") appeals from an order entered denying his motion to suppress. We vacate the order appealed from and remand this case to the trial court to enter further findings of fact and conclusions of law.

## I. Background

On 23 August 2006, Trooper C.J. White ("Trooper White") and other members of the North Carolina State Highway Patrol established a driver's license checkpoint at the intersection of Highway I-85 and Glenwood Drive in Charlotte, North Carolina. Several armed robberies had occurred near this area the preceding week. In the most recent incident, the suspects were last seen driving a stolen sports utility vehicle in the vicinity of the checkpoint's location.

In accordance with State Highway Patrol policies, Sergeant Fred Hardgro was notified of the checkpoint's location. The checkpoint began between 9:00 and 10:00 p.m. As vehicles approached the checkpoint, they were stopped and the occupants were asked to produce a valid driver's license and vehicle registration "unless the traffic [did not] allow it." Each motorist was detained for a period no longer than required to produce and verify their license and registration. Citations were issued for any violations the checkpoint produced.

At approximately 11:00 p.m., defendant approached the checkpoint and was asked by Trooper White to produce his driver's license and vehicle registration. Trooper White testified he detected a strong odor of alcohol both on defendant's breath and emanating from defendant's vehicle. Trooper White also observed that defendant had "red glassy eyes" and "slurred speech." Defendant was directed to place his vehicle in park and exit the vehicle. Defendant exited his vehicle with its transmission still in drive. Trooper White testified that defendant was unsteady on his feet and used the vehicle for support to remain standing. When Trooper White reached out to assist

**STATE v. GABRIEL**

[192 N.C. App. 517 (2008)]

him, defendant responded "I'm okay, I will not fall; I'm not high; I'm not high."

Defendant was subsequently issued citations for driving while impaired and driving while license revoked. In district court, defendant pled guilty to driving while impaired and the trial court imposed a suspended sentence of 120 days imprisonment and placed defendant on unsupervised probation for a period of 12 months. Defendant gave notice of appeal to the superior court. On 23 February 2007, defendant filed a motion to suppress the evidence obtained at the checkpoint on the ground that the checkpoint was unconstitutional.

On 3 April 2007, after the motion to suppress hearing, the superior court denied defendant's motion. Defendant pled guilty to driving while impaired and driving while license revoked, reserving the right to appeal the trial court's adverse ruling on his motion to suppress. The trial court imposed a suspended sentence of 120 days imprisonment and defendant was placed on unsupervised probation for a period of 24 months for his driving while impaired charge. The trial court also imposed a suspended sentence of 45 days imprisonment for defendant's driving while license revoked charge. Defendant appeals.

## II. Issue

Defendant argues the trial court erred by denying his motion to suppress.

## III. Standard of Review

This Court has stated:

> The trial court's findings of fact regarding a motion to suppress are conclusive and binding on appeal if supported by competent evidence. This Court determines if the trial court's findings of fact support its conclusions of law. Our review of a trial court's conclusions of law on a motion to suppress is *de novo*.

*State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (internal citations and quotations omitted), *disc. rev. denied*, 362 N.C. 89, 656 S.E.2d 281 (2007).

## IV. Motion to Suppress

Defendant asserts the trial court erred by denying his motion to suppress the evidence obtained at the 23 August 2006 checkpoint. Defendant argues the primary purpose of the driver's license

checkpoint was unconstitutional, any seizure that occurred when his vehicle was stopped was unlawful and his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, §§ 19, 21, and 23 of the North Carolina Constitution were violated.

It is well-established that police officers effectuate a "seizure" under the Fourth Amendment when they stop a vehicle at a driver's license checkpoint. *State v. Rose*, 170 N.C. App. 284, 288, 612 S.E.2d 336, 339, *disc. rev. denied*, 359 N.C. 641, 617 S.E.2d 656 (2005). In order to conform with the Fourth and Fourteenth Amendments, the checkpoint must be "reasonable." *Id.* "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Id.* (citation and quotation omitted). However, the general requirement of individualized suspicion is not necessary under certain situations, including: (1) checkpoints, which screen for driver's license and vehicle registration violations; (2) "sobriety checkpoints[;]" and (3) checkpoints designed to intercept illegal aliens. *Id.* (citations omitted).

Conversely, "[s]tops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime[]" are unconstitutional and cannot be sanctioned by this Court. *Id.* at 289, 612 S.E.2d at 339. Further, a checkpoint with an unlawful primary purpose will not become constitutional when coupled with a lawful secondary purpose. *See State v. Veazey*, 191 N.C. App. 181, 185, 662 S.E.2d 683, 686 (2008) ("[A] checkpoint with an invalid primary purpose, such as checking for illegal narcotics, cannot be saved by adding a lawful secondary purpose to the checkpoint, such as checking for intoxicated drivers. Otherwise, . . . law enforcement authorities would be able to establish checkpoints for virtually any purpose so long as they also included a license or sobriety check." (Citations and quotations omitted)).

"When considering a challenge to a checkpoint, the reviewing court must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements." *Id.* The court must first "determine the primary programmatic purpose of the checkpoint program." *Id.* (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 40-42, 148 L. Ed. 2d 333, 343 (2000)). Once a legitimate primary programmatic purpose is determined, the court must also analyze whether the checkpoint was reasonable by weighing the public's interest in the checkpoint against the intrusion on the defendant's

Fourth and Fourteenth Amendments privacy interests. *Rose*, 170 N.C. App. at 293, 612 S.E.2d at 342.

### A. Primary Programmatic Purpose

In considering the constitutionality of a checkpoint, the trial court must initially "examine the available evidence to determine the purpose of the checkpoint program." *Id.* at 289, 612 S.E.2d at 339 (citation and quotation omitted). This Court recently stated:

> where there is no evidence in the record to contradict the State's proffered purpose for a checkpoint, a trial court may rely on the testifying police officer's assertion of a legitimate primary purpose. However, *where there is evidence in the record that could support a finding of either a lawful or unlawful purpose, a trial court cannot rely solely on an officer's bare statements as to a checkpoint's purpose.*

*Veazey*, 191 N.C. App. at 187, 662 S.E.2d at 687-88 (internal citations and quotations omitted) (emphasis supplied). We also further held that when a trooper's testimony varies concerning the primary purpose of the checkpoint, the trial court is "required to make findings regarding the actual primary purpose of the checkpoint and . . . to reach a conclusion regarding whether this purpose was lawful." *Id.* at 190, 662 S.E.2d at 689.

Here, the State's evidence at the motion to suppress hearing consisted solely of Trooper White's testimony. During the hearing, Trooper White testified that "[t]he reason for that particular checkpoint . . . [was] we had several armed robberies within the area . . . [t]hey were all last seen or last sighting [sic] were in that approximate area." However, Trooper White also testified that "[t]here's no systematic plan of what we were particularly looking for[] . . . *[t]he purpose of the checkpoint was to issue citations for anything that came through. If we just so happen to have that [stolen] vehicle come through, I mean, within that immediate area, but we don't particularly investigate robberies." (Emphasis supplied).

After Trooper White's cross-examination, the State attempted to submit to the trial court that the primary programmatic purpose of the checkpoint was to "stop and check individual's driver's license, registration, etcetera [sic] [.]" The trial court acknowledged the variances in Trooper White's testimony by stating: "at one point [Trooper White] did say that, but at one point he said that there was nothing that [they] were looking for in particular. No systematic plan of what

STATE v. GABRIEL

[192 N.C. App. 517 (2008)]

they were going to do." Because Trooper White's testimony varied regarding the primary programmatic purpose of the checkpoint, the trial court could "not simply accept the State's invocation of a proper purpose, but instead [was required to] carry out a close review of the scheme at issue." *Rose*, 170 N.C. App. at 289, 612 S.E.2d at 339 (citation and quotation omitted).

This type of searching inquiry is required "to ensure an illegal multi-purpose checkpoint is not made legal by the simple device of assigning the primary purpose to one objective instead of the other." *Veazey*, 191 N.C. App. at 187, 662 S.E.2d at 688 (citations and quotations omitted). Without independent findings of fact regarding the actual primary purpose of the checkpoint, "the trial court could not . . . issue a conclusion regarding whether . . . the checkpoint was lawful." *Id.* at 190, 662 S.E.2d at 689 (citation omitted).

The record on appeal is devoid of a written order containing the requisite findings of fact and conclusions of law. The trial court also failed to enunciate its findings and conclusions in open court. The only evidence to indicate the trial court denied defendant's motion to suppress, is its statement "[m]y understanding is that you're going to plead guilty to these charges, because I have ruled against you on your Motion to Suppress."

Because the trial court denied defendant's motion to suppress without making any findings of fact or conclusions of law regarding the checkpoint's primary programmatic purpose, we are unable to determine the constitutionality of the checkpoint. *Id.* at ——, 662 S.E.2d at 689. We vacate the order appealed from and remand this case to the trial court to take additional evidence and enter the required findings of fact and conclusions of law regarding the primary programmatic purpose of the checkpoint.

### B. Reasonableness

If the trial court finds that the primary programmatic purpose of the checkpoint was lawful, its inquiry does not end with that finding. *Rose*, 170 N.C. App. at 293, 612 S.E.2d at 342. The trial court must also determine whether the checkpoint was reasonable based upon the individual circumstances of each case. *Id.*

To determine whether the checkpoint was reasonable, the trial court must weigh the public's interest in the checkpoint against the individual's Fourth and Fourteenth Amendments privacy interests. *Id.* When conducting this balancing inquiry the court should examine:

"(1) the gravity of the public concern served by the seizure[;] (2) the degree to which the seizure advances the public interest[;] and (3) the severity of the interference with individual liberty." *Id.* at 293-94, 612 S.E.2d at 342 (citation and quotation omitted). If these factors weigh in favor of the public interest, the checkpoint is reasonable and constitutional. *Veazey,* 191 N.C. App. at 195, 662 S.E.2d at 687. On remand, if the trial court finds that the checkpoint had a proper primary programmatic purpose, it must also enter findings of fact and conclusions of law regarding the reasonableness of the checkpoint.

## V. Conclusion

The trial court is required to take additional evidence and enter findings of fact and conclusions of law regarding the primary programmatic purpose and the reasonableness of the driver's license checkpoint. Because defendant pled guilty to driving while impaired and driving while license revoked subject to the court's adverse ruling on his motion to suppress, we vacate defendant's convictions and the judgments entered thereon. This case is remanded to the trial court for further proceedings not inconsistent with this opinion.

Vacated and Remanded.

Judges CALABRIA and ELMORE concur.