NO. COA14-893

 NORTH CAROLINA COURT OF APPEALS

 Filed: 3 March 2015

STATE OF NORTH CAROLINA

 v. Mecklenburg County
 Nos. 10 CRS 211197-99

DERRICK LEE McDONALD
 Defendant.

 Appeal by defendant by writ of certiorari from order entered

14 July 2011 by Judge Hugh B. Lewis in Mecklenburg County Superior

Court. Heard in the Court of Appeals 3 December 2014.

 Roy Cooper, Attorney General, by Joseph L. Hyde, Assistant
 Attorney General, for the State.

 Staples Hughes, Appellate Defender, by Jon H. Hunt, Assistant
 Appellate Defender, for defendant-appellant.

 DAVIS, Judge.

 Derrick Lee McDonald (“Defendant”) appeals by writ of

certiorari from his convictions of possession with intent to sell

or deliver cocaine and possession of marijuana. On appeal, he

contends that the trial court erred by denying his motion to

suppress. After careful review, we vacate the trial court’s order

and remand for further proceedings consistent with this opinion.

 Factual Background
 -2-

 On 11 March 2010, Detective Brett Riggs (“Detective Riggs”)

with the Charlotte-Mecklenburg Police Department (“CMPD”) prepared

a written operational plan for a checkpoint (“the Checkpoint”) at

the intersection of Ashley Road and Joy Street in Charlotte, North

Carolina. The Checkpoint was conducted that night from 12:34 a.m.

to 1:52 a.m. Every vehicle driving through the Checkpoint was

stopped, and the officers asked the driver of each vehicle for his

or her driver’s license.

 During the course of the Checkpoint’s implementation, a

vehicle in which Defendant was riding in the front passenger seat

was stopped. The only other occupant of the vehicle was the

driver.1 When several of the officers approached the vehicle, they

detected a strong odor of marijuana emanating therefrom. Defendant

opened the front passenger door and exited the vehicle. As he did

so, a bag containing 41.4 grams of marijuana, two baggies

containing 2.7 grams of powder cocaine, a digital scale, cell

phones, and a set of keys all fell out of the vehicle. Defendant

was placed under arrest.

 On 6 July 2010, Defendant was indicted for (1) possession of

a Schedule VI controlled substance; (2) possession with intent to

sell or deliver a controlled substance; and (3) possession of drug

paraphernalia. On 26 October 2010, Defendant filed in Mecklenburg

1
 The record does not contain the driver’s name.
 -3-

County Superior Court a motion to suppress all evidence obtained

as a result of the traffic stop based on his assertion that the

Checkpoint was unconstitutional.

 A hearing on Defendant’s motion to suppress was heard on 13

July 2011 by Judge Hugh B. Lewis. At the hearing, Detective Riggs

testified, in pertinent part, as follows:

 Q. What was the purpose of the license
 checkpoint?

 A. As a driver safety checkpoint, checking for
 valid driver’s license, registration, proper
 registration on the vehicles coming through
 the checkpoint.

 Q. And was there a proper plan for this
 checkpoint?

 A. Yes, sir. I typed up an operational plan
 essentially stating that every car that
 approached the checkpoint would be stopped,
 the driver would be asked to produce their
 driver’s license.

 I had a provision in the ops plan that
 stated that if a hazard — or if it became a
 hazard to conduct the check due to weather,
 circumstances, that it would be cancelled.
 Additionally if traffic became backed up we
 would allow all cars to move through until the
 traffic lightened and then we’d begin checking
 every car.

 During the hearing, the State introduced into evidence the

written plan for the Checkpoint prepared by Detective Riggs. The

written plan stated that the purpose of the Checkpoint was “[t]o

increase police presence in the targeted area while checking for

Operators License and Vehicle Registration violations.” The plan
 -4-

also detailed the pattern to which the officers would adhere in

conducting the Checkpoint:

 Predetermined Pattern: All vehicles coming
 through the check point shall be stopped
 unless the Officer in charge determines that
 a hazard has developed or that an unreasonable
 delay to motorist [sic] is occurring. At that
 point all vehicles will be allowed to pass
 through until the hazard or delay is cleared.

 On 14 July 2011, the trial court entered a written order

denying Defendant’s motion to suppress. Defendant subsequently

entered a plea of guilty. The trial transcript did not reflect

that Defendant intended to appeal the denial of his motion prior

to entering his guilty plea, and no notice of his intention to

appeal the motion was contained in the transcript of plea.

Defendant was sentenced to 6-8 months imprisonment. The sentence

was suspended, and Defendant was placed on 24 months supervised

probation.

 Defendant then attempted to appeal the order denying his

motion to suppress. The State filed a motion to dismiss the appeal

on the ground that Defendant had failed to properly preserve his

right to appeal the order. In an unpublished opinion filed on 17

July 2012, we dismissed Defendant’s appeal without prejudice to

his right to seek an evidentiary hearing in superior court for a

determination of whether his guilty plea did, in fact, reserve his

right to appeal the denial of his motion to suppress. State v.

McDonald, 221 N.C. App. 670, 729 S.E.2d 128 (2012) (unpublished).
 -5-

 Defendant subsequently filed a motion for appropriate relief,

which was heard by the trial court on 1 February 2013. On that

same date, the trial court ordered that Defendant’s plea transcript

be amended to reflect Defendant’s intent to appeal the denial of

his motion to suppress. Defendant filed a petition for writ of

certiorari on 23 December 2013, which this Court granted by order

entered 7 January 2014.

 Analysis

 Defendant’s sole argument on appeal is that the trial court

erred in denying his motion to suppress. Specifically, Defendant

asserts that the trial court failed to determine (1) the

Checkpoint’s primary programmatic purpose; and (2) the

reasonableness of the Checkpoint.

 When reviewing a motion to suppress evidence,
 this Court determines whether the trial
 court’s findings of fact are supported by
 competent evidence and whether the findings of
 fact support the conclusions of law. If
 supported by competent evidence, the trial
 court’s findings of fact are conclusive on
 appeal, even if conflicting evidence was also
 introduced. However, conclusions of law
 regarding admissibility are reviewed de novo.

State v. Jarrett, 203 N.C. App. 675, 677, 692 S.E.2d 420, 423

(citation and internal quotation marks omitted), disc. review

denied, 364 N.C. 438, 702 S.E.2d 501 (2010). In the present case,

the trial court made the following pertinent findings of fact:

 1. On July 13, 2011, the defense made a motion
 to suppress the checkpoint and any evidence
 -6-

produced thereafter on the basis that the
checkpoint was unconstitutional.

2. The State called Detective B. Riggs, the
arresting officer, as a witness.

3. Det. Riggs testified that he was the
officer in charge and that he had developed
the operation plan for the checkpoint that
took place near the intersection of Ashley Rd.
and Joy St. on the evening of March 11, 2010.

4. Det. Riggs also testified that the purpose
of the checkpoint was to check for operator’s
license and vehicle registration and insurance
violations.

5. It was Det. Riggs’s testimony that every
vehicle was to be stopped and checked for
proper license, registration, and insurance,
unless the weather became a hazard or traffic
was unreasonably delayed; in those cases Det.
Riggs said that either the checkpoint would be
shut down or they would allow all vehicles to
pass through until the hazard or delay was no
longer present, at which point they would
resume checking each vehicle.

6. Det. Riggs testified that every vehicle was
stopped.

7. The State entered the physical document of
the operation plan into evidence as State’s
Pre-trial Exhibit #1, which is attached to the
order.

8. The language in the operation plan (State’s
Pre-trial Exhibit #1) laid out the purpose and
pattern of the checkpoint.

 a. The purpose of the checkpoint was, “To
 increase police presence in the targeted
 area while checking for Operator’s
 License and Vehicle Registration
 violations.”

 b. The predetermined pattern was, “All
 -7-

 vehicles coming through the checkpoint
 shall be stopped unless the Officer in
 charge determines that a hazard has
 developed or that an unreasonable delay
 to motorists is occurring. At that point
 all vehicles will be allowed to pass
 through until the hazard or delay is
 cleared.”

The trial court then made the following pertinent conclusions of

law:

 1. Under N.C.G.S. § 20-16.3A(a)(2a) [sic], a
 pattern is required, but does not need to be
 in writing; however, here we have both Det.
 Riggs’s testimony and the written operation
 plan that express the pattern that was
 exercised at the checkpoint.

 2. Additionally, N.C.G.S. § 20-16.3A(a)(2)
 requires that law-enforcement designate what
 they will check for and how the vehicles will
 be stopped; Det. Riggs’s testimony and the
 written operation plan indicated that all
 vehicles would be stopped and that they would
 be checking for Operator’s License and Vehicle
 Registration violations.

 3. In State v. Barnes, the North Carolina
 Court of Appeals found that where the findings
 showed that a checking station was conducted
 in substantial compliance with required
 guidelines a motion to suppress was not
 proper. State v. Barnes, 123 N.C. App. 144,
 472 S.E.2d 784 (1996).

 4. Based on Det. Riggs’s testimony and the
 written operation plan, the checkpoint
 conducted by Det. Riggs was in compliance with
 the applicable statute and did not violate the
 defendant’s constitutional rights.

 In denying Defendant’s motion to suppress, the trial court

relied upon our decision in State v. Barnes, 123 N.C. App. 144,
 -8-

472 S.E.2d 784 (1996). In Barnes, the defendant was stopped at a

checkpoint and arrested for driving while impaired. The officers

conducting the checkpoint stopped all vehicles that approached the

checkpoint, the stated purpose of which was “to detect driver’s

license and registration violations as well as other motor vehicle

violations including driving while impaired.” Id. at 146, 472

S.E.2d at 785. The defendant moved to suppress all evidence

stemming from the checkpoint on the ground that it had been

conducted in an unconstitutional manner, and the trial court

granted the defendant’s motion. On appeal, this Court reversed,

holding that

 [u]pon careful review of the evidence, we find
 that the court’s findings do not support its
 conclusion that the checking station was not
 conducted in accordance with required
 guidelines. Instead, the findings show that
 there was substantial compliance with N.C.
 Gen. Stat. § 20–16.3A and [State Highway
 Patrol] Directive 63. Accordingly, we find no
 fourth amendment violation and we reverse the
 trial court’s order granting defendant’s
 motion to suppress.

Id. at 147, 472 S.E.2d at 785.

 Since Barnes was decided, however, this Court has modified

the framework it employs in analyzing Fourth Amendment challenges

to checkpoints based on intervening decisions on this subject from

the United States Supreme Court. We explained this framework in

State v. Veazey, 191 N.C. App. 181, 662 S.E.2d 683 (2008).
 -9-

 In Veazey, a state trooper set up a driver’s license

checkpoint. When the defendant was stopped at the checkpoint, the

trooper detected a strong odor of alcohol on him and ultimately

arrested him for driving while impaired. At trial, the defendant

moved to suppress evidence stemming from the checkpoint on the

ground that the checkpoint violated his rights under the Fourth

and Fourteenth Amendments. The trial court denied the defendant’s

motion to suppress. Id. at 182-83, 662 S.E.2d at 684-85.

 On appeal, we remanded the case to the trial court for new

findings and conclusions, applying the United States Supreme

Court’s decisions in City of Indianapolis v. Edmond, 531 U.S. 32,

148 L.Ed.2d 333 (2000), and Illinois v. Lidster, 540 U.S. 419, 157

L.Ed.2d 843 (2004) — both of which were decided after Barnes. We

held that in reviewing a constitutional challenge to a checkpoint,

courts are required to apply a two-part test in order to determine

its reasonableness. Veazey, 191 N.C. App. at 185-86, 662 S.E.2d

at 686-87.

 We noted that, as an initial matter, Edmond requires the

identification of the primary programmatic purpose of the

checkpoint.

 First, the court must determine the primary
 programmatic purpose of the checkpoint. In
 Edmond, the United States Supreme Court
 distinguished between checkpoints with a
 primary purpose related to roadway safety and
 checkpoints with a primary purpose related to
 general crime control. According to the
 -10-

 Court, checkpoints primarily aimed at
 addressing immediate highway safety threats
 can justify the intrusions on drivers’ Fourth
 Amendment privacy interests occasioned by
 suspicionless stops. However, the Edmond
 Court also held that police must have
 individualized suspicion to detain a vehicle
 for general crime control purposes, and
 therefore a checkpoint with a primary purpose
 of general crime control contravenes the
 Fourth Amendment.

 The Supreme Court in Edmond also noted that a
 checkpoint with an invalid primary purpose,
 such as checking for illegal narcotics, cannot
 be saved by adding a lawful secondary purpose
 to the checkpoint, such as checking for
 intoxicated drivers. Otherwise, according to
 the Court, law enforcement authorities would
 be able to establish checkpoints for virtually
 any purpose so long as they also included a
 license or sobriety check. For this reason,
 courts must examine the available evidence to
 determine the primary purpose of the
 checkpoint program.

Id. at 185, 662 S.E.2d at 686 (internal citations, quotation marks,

and brackets omitted).

 Next, we addressed the second prong of the test for

determining a checkpoint’s constitutionality based on Lidster:

 Second, if a court finds that police had a
 legitimate primary programmatic purpose for
 conducting a checkpoint, “[t]hat does not mean
 the stop is automatically, or even
 presumptively, constitutional. It simply
 means that [the court] must judge its
 reasonableness, hence, its constitutionality,
 on the basis of the individual circumstances.”
 Lidster, 540 U.S. at 426, 157 L.Ed.2d at 852.
 To determine whether a checkpoint was
 reasonable under the Fourth Amendment, a court
 must weigh the public’s interest in the
 checkpoint against the individual’s Fourth
 -11-

 Amendment privacy interest. See, e.g.,
 Martinez–Fuerte, 428 U.S. at 555, 49 L.Ed.2d
 at 1126. In Brown v. Texas, 443 U.S. 47, 61
 L.Ed.2d 357 (1979), the United States Supreme
 Court held that when conducting this balancing
 inquiry, a court must weigh “[(1)] the gravity
 of the public concerns served by the seizure,
 [(2)] the degree to which the seizure advances
 the public interest, and [(3)] the severity of
 the interference with individual liberty.”
 Id. at 51, 61 L.Ed.2d at 362. If, on balance,
 these factors weigh in favor of the public
 interest, the checkpoint is reasonable and
 therefore constitutional. See, e.g., Lidster,
 540 U.S. at 427–28, 157 L.Ed.2d at 852–53.

Veazey, 191 N.C. App. at 185-86, 662 S.E.2d at 686-87.

 Therefore, it is clear that the analysis employed by this

Court in Barnes has been superseded by decisions from the United

States Supreme Court and that the analytical framework articulated

in Veazey must instead be used in reviewing challenges to the

constitutionality of a checkpoint. Accordingly, we must now

determine whether the trial court properly utilized this framework

in the present case.

I. Primary Programmatic Purpose

 Defendant first argues that the trial court failed to

determine the Checkpoint’s primary programmatic purpose.

Specifically, he argues that the trial court found two purposes —

one that was lawful and another that was unlawful — without

determining which of these two purposes was the primary one. We

disagree.

 In determining a checkpoint’s legality, “the trial court must
 -12-

initially examine the available evidence to determine the purpose

of the checkpoint program.” State v. Gabriel, 192 N.C. App. 517,

521, 665 S.E.2d 581, 585 (2008) (citation and internal quotation

marks omitted). The rationale behind inquiring into a checkpoint’s

primary programmatic purpose is that “[t]his type of searching

inquiry is required to ensure an illegal multi-purpose checkpoint

is not made legal by the simple device of assigning the primary

purpose to one objective instead of the other.” Id. at 522, 665

S.E.2d at 585 (citation and internal quotation marks omitted).

 [W]here there is no evidence in the record to
 contradict the State’s proffered purpose for
 a checkpoint, a trial court may rely on the
 testifying police officer’s assertion of a
 legitimate primary purpose. However, where
 there is evidence in the record that could
 support a finding of either a lawful or
 unlawful purpose, a trial court cannot rely
 solely on an officer’s bare statements as to
 a checkpoint’s purpose. In such cases, the
 trial court may not simply accept the State’s
 invocation of a proper purpose, but instead
 must carry out a close review of the scheme at
 issue.

Veazey, 191 N.C. App. at 187, 662 S.E.2d at 687-88 (internal

citations, quotation marks, and brackets omitted); see also

Gabriel, 192 N.C. App. at 521, 665 S.E.2d at 585 (“[W]hen a

trooper’s testimony varies concerning the primary purpose of the

checkpoint, the trial court is required to make findings regarding

the actual primary purpose of the checkpoint and to reach a
 -13-

conclusion regarding whether this purpose was lawful.” (citation,

internal quotation marks, and ellipses omitted)).

 In the present case, the trial court found that “[t]he purpose

of the checkpoint was, ‘To increase police presence in the targeted

area while checking for Operator’s License and Vehicle

Registration violations.’” It is well established that

checkpoints may lawfully be conducted for the purpose of

“verify[ing] drivers’ licenses and vehicle registrations[.]”

State v. Rose, 170 N.C. App. 284, 288, 612 S.E.2d 336, 339, appeal

dismissed and disc. review denied, 359 N.C. 641, 617 S.E.2d 656

(2005).

 The trial court’s finding that the Checkpoint’s purpose was

to check for driver’s license and vehicle registration violations

was supported by the testimony of Detective Riggs and the written

plan for the Checkpoint. Defendant contends, however, that the

trial court found the Checkpoint also served the dual purpose of

increasing police presence in the area. He attempts to equate

this latter purpose with a general crime control purpose, which

our courts have held cannot serve as the basis for a checkpoint.

See Veazey, 191 N.C. App. at 185, 662 S.E.2d at 686 (“[P]olice

must have individualized suspicion to detain a vehicle for general

crime control purposes, and therefore a checkpoint with a primary

purpose of general crime control contravenes the Fourth

Amendment.”).
 -14-

 We reject Defendant’s argument on this issue as we do not

believe an attempt to increase police presence in an affected area

while conducting a checkpoint for a recognized lawful purpose is

akin to operating a checkpoint for the general detection of crime.

The trial court’s reference to increasing police presence was

linked to the permissible purpose of checking for driver’s license

and vehicle registration violations. Defendant does not point to

any evidence in the record suggesting that the Checkpoint was

actually being operated for the purpose of general crime control

or that the stated desire to check for driver’s license and vehicle

registration violations was a mere subterfuge. Moreover, as the

State notes in its brief, any checkpoint inherently results in the

increased presence of law enforcement officers in the subject area.

Accordingly, Defendant’s argument on this issue is overruled.

II. Reasonableness

 Defendant’s final argument is that the trial court erred in

failing to adequately determine the reasonableness of the

Checkpoint. We agree.

 As discussed above, a trial court’s inquiry does not end with

the finding that a checkpoint has a lawful primary programmatic

purpose.

 After finding a legitimate programmatic
 purpose, the trial court must determine
 whether the roadblock was reasonable and,
 thus, constitutional. To determine whether a
 seizure at a checkpoint is reasonable requires
 -15-

 a balancing of the public’s interest and an
 individual’s privacy interest. In order to
 make this determination, this Court has
 required application of the three-prong test
 set out by the United States Supreme Court in
 Brown v. Texas. Under Brown, the trial court
 must consider [1] the gravity of the public
 concerns served by the seizure; [2] the degree
 to which the seizure advances the public
 interest; and [3] the severity of the
 interference with individual liberty.

State v. Townsend, __ N.C. App. __, __, 762 S.E.2d 898, 907-08

(2014) (internal citations, quotation marks, and brackets

omitted); see also Jarrett, 203 N.C. App. at 679, 692 S.E.2d at

424-25 (“Although the trial court concluded that the checkpoint

had a lawful primary purpose, its inquiry does not end with that

finding. Instead, the trial court must still determine whether

the checkpoint itself was reasonable. . . . In order to make this

determination, this Court has required application of the three-

prong test set out by the United States Supreme Court in Brown v.

Texas. . . .” (internal citations and quotation marks omitted)).

 We have held that “[t]he first Brown factor — the gravity of

the public concerns served by the seizure — analyzes the importance

of the purpose of the checkpoint. This factor is addressed by

first identifying the primary programmatic purpose . . . and then

assessing the importance of the particular stop to the public.”

Rose, 170 N.C. App. at 294, 612 S.E.2d at 342 (internal citation

omitted).

 With regard to “the second Brown prong — the degree to which
 -16-

the seizure advanced public interests — the trial court [is]

required to determine whether the police appropriately tailored

their checkpoint stops to fit their primary purpose.” State v.

Nolan, 211 N.C. App. 109, 121, 712 S.E.2d 279, 287 (citation,

internal quotation marks, and brackets omitted), cert. denied, 365

N.C. 337, 731 S.E.2d 834 (2011).

 Our Court has previously identified a number
 of non-exclusive factors that courts should
 consider when determining whether a checkpoint
 is appropriately tailored, including: whether
 police spontaneously decided to set up the
 checkpoint on a whim; whether police offered
 any reason why a particular road or stretch of
 road was chosen for the checkpoint; whether
 the checkpoint had a predetermined starting or
 ending time; and whether police offered any
 reason why that particular time span was
 selected.

Veazey, 191 N.C. App. at 191, 662 S.E.2d at 690.

 Finally, in applying the third Brown factor, “courts have

consistently required restrictions on the discretion of the

officers conducting the checkpoint to ensure that the intrusion on

individual liberty is no greater than is necessary to achieve the

checkpoint’s objectives.” Id. at 192, 662 S.E.2d at 690-91.

 Courts have previously identified a number of
 non-exclusive factors relevant to officer
 discretion and individual privacy, including:
 the checkpoint’s potential interference with
 legitimate traffic; whether police took steps
 to put drivers on notice of an approaching
 checkpoint; whether the location of the
 checkpoint was selected by a supervising
 official, rather than by officers in the
 field; whether police stopped every vehicle
 -17-

 that passed through the checkpoint, or stopped
 vehicles pursuant to a set pattern; whether
 drivers could see visible signs of the
 officers’ authority; whether police operated
 the checkpoint pursuant to any oral or written
 guidelines; whether the officers were subject
 to any form of supervision; and whether the
 officers received permission from their
 supervising officer to conduct the checkpoint.
 Our Court has held that these and other
 factors are not lynchpins, but instead are
 circumstances to be considered as part of the
 totality of the circumstances in examining the
 reasonableness of a checkpoint.

Id. at 193, 662 S.E.2d at 691 (internal citations, quotation marks,

and brackets omitted).

 In conclusion of law 4 in its order, the trial court made the

following determination:

 4. Based on Det. Riggs’s testimony and the
 written operation plan, the checkpoint
 conducted by Det. Riggs was in compliance with
 the applicable statute and did not violate the
 defendant’s constitutional rights.

 We do not believe this bare conclusion is sufficient given

the failure of the trial court to adequately assess the

Checkpoint’s reasonableness under the constitutional framework set

out in Veazey and applied in other recent cases from our Court.

While it appears that evidence was received at the suppression

hearing as to many of the factors that are relevant under the Brown

test, the trial court’s order lacks express findings on a number

of these issues.

 With regard to the first prong of the Brown test, the trial
 -18-

court made no findings concerning the gravity of the public

concerns served by the Checkpoint. While — as discussed above —

checking for driver’s license and vehicle registration violations

is a permissible purpose for the operation of a checkpoint, the

identification of such a purpose does not exempt the trial court

from determining the gravity of the public concern actually

furthered under the circumstances surrounding the specific

checkpoint being challenged. See Rose, 170 N.C. App. at 293, 612

S.E.2d at 342 (“[E]ven if a checkpoint is for one of the

permissible purposes, that does not mean the stop is automatically,

or even presumptively, constitutional. It simply means that we

must judge its reasonableness, hence, its constitutionality, on

the basis of the individual circumstances.” (citation, internal

quotation marks, and brackets omitted)).

 As to the second Brown prong, there were no findings made by

the trial court regarding a number of the factors relevant to the

issue of whether the Checkpoint was appropriately tailored to meet

its primary purpose. For example, the trial court’s order failed

to address (1) why the intersection of Ashley Road and Joy Street

was chosen for the Checkpoint; (2) whether the Checkpoint had a

predetermined starting or ending time; and (3) whether there was

any reason why that particular time span was selected. Veazey,

191 N.C. App. at 191, 662 S.E.2d at 690.

 Finally, with regard to the third Brown prong, the trial court
 -19-

made no findings addressing whether the location of the Checkpoint

was selected by Detective Riggs or by his supervisor or the manner

in which the officers conducting the Checkpoint were subject to

supervision. In addition, no findings were made as to whether (1)

the officers took steps to put drivers on notice of an approaching

checkpoint; (2) drivers could see visible signs of the officers’

authority; and (3) the officers conducting the checkpoint were

provided with any oral or written guidelines. Id. at 193, 662

S.E.2d at 691.

 We do not mean to imply that the factors discussed above are

exclusive or that trial courts must mechanically engage in a rote

application of them in every order ruling upon a motion to suppress

in the checkpoint context. Rather, our holding today simply

reiterates our rulings in Veazey and its progeny that in order to

pass constitutional muster, such orders must contain findings and

conclusions sufficient to demonstrate that the trial court has

meaningfully applied the three prongs of the test articulated in

Brown.

 As such, we must vacate the trial court’s order and remand so

that the trial court can make appropriate findings as to the

reasonableness of the Checkpoint under the Fourth Amendment. See

Rose, 170 N.C. App. at 298-99, 612 S.E.2d at 345 (“Based on our

review of the trial court’s order, it appears that the trial court

concluded that the checkpoint was reasonable based solely on the
 -20-

purpose of the checkpoint and the fact that the officers stopped

every car. In doing so, the court addressed the first prong of

the . . . analysis and part of the third prong. The court made no

findings regarding the tailoring of the checkpoint to the purpose

(the second prong) and failed to consider all of the circumstances

relating to the discretion afforded the officers in conducting the

checkpoint (the third prong). Accordingly, we remand for further

findings as to each of the . . . factors and a weighing of those

factors to determine whether the checkpoint was reasonable.”);

Veazey, 191 N.C. App. at 194-95, 662 S.E.2d at 692 (“[T]hese

findings alone cannot support a conclusion that the checkpoint was

reasonable because the trial court did not make adequate findings

on the first two Brown prongs. . . . The trial court . . . was

required to explain why it concluded that, on balance, the public

interest in the checkpoint outweighed the intrusion on Defendant’s

protected liberty interests. The trial court’s written order,

however, contains no such explanation. Therefore, if the trial

court determines on remand that the State’s primary purpose for

the checkpoint was lawful, it must also issue new findings and

conclusions regarding the reasonableness of the checkpoint.”).2

2
 We further note that a number of the trial court’s “findings” in
its order are not actual findings but rather are merely recitations
of testimony. See State v. Derbyshire, __ N.C. App. __, __, 745
S.E.2d 886, 892-93 (2013) (“[A trial court’s] mere recitation of
testimony . . . is not sufficient to constitute a valid finding of
fact. . . . Findings of fact must be more than a mere summarization
 -21-

 Conclusion

 For the reasons stated above, we vacate the trial court’s

order denying Defendant’s motion to suppress and remand for further

proceedings consistent with this opinion.

 VACATED AND REMANDED.

 Judges CALABRIA and ELMORE concur.

or recitation of the evidence . . . [O]ur review is limited to
those facts found by the trial court and the conclusions reached
in reliance on those facts, not the testimony recited by the trial
court in its order.” (internal citations, quotation marks, and
brackets omitted)), disc. review denied, __ N.C. __, 753 S.E.2d
785 (2014). We therefore instruct the trial court on remand to
make findings of fact based upon its evaluation of the evidence
and not to merely recite the testimony of Detective Riggs and the
contents of the written plan for the Checkpoint.