An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1403

Filed: 6 October 2015

Brunswick County, No. 12 CRS 55699

STATE OF NORTH CAROLINA

       v.

JOSEPH VELTON O'NEAL

Appeal by defendant from judgment entered 23 April 2014 by Judge Claire V. Hall in Brunswick County Superior Court. Heard in the Court of Appeals 4 June 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*
>
> *William D. Spence for defendant-appellant.*

McCULLOUGH, Judge.

Joseph Velton O'Neal ("defendant") appeals the denial of his motion to suppress following the entry of judgment on his guilty plea to impaired driving. For the following reasons we affirm.

## I.    Background

Shortly after midnight on 4 November 2012, defendant stopped at a checkpoint conducted by the Brunswick County Sheriff's Office on River Road in Leland and was

issued a citation for operating a vehicle on a street or highway while subject to an impairing substance. A judgment entered in the case on 9 May 2013 in Brunswick County District Court shows defendant pled guilty to impaired driving with an alcohol concentration of .09 and appealed to Superior Court. Once in Superior Court, defendant filed a motion to suppress evidence on the basis that the checkpoint was in violation of the Constitution of the United States and the Constitution of North Carolina. Defendant's motion came on for hearing in Brunswick County Superior Court before the Honorable Ola M. Lewis on 20 December 2013. Upon hearing testimony and arguments, the trial court denied defendant's motion to dismiss, issuing findings and conclusions. An order memorializing the trial court's denial of defendant's motion to suppress was later filed on 30 December 2013.

Subsequent to the denial of his motion to suppress, defendant pled guilty to impaired driving in Brunswick County Superior Court on 23 April 2014 and reserved his right to appeal the denial of his motion to suppress as part of the plea agreement. The trial court then entered judgment, imposed a sixty day sentence, and suspended the sentence on condition that defendant complete twelve months of unsupervised probation. Defendant was further ordered to pay fines, surrender his driver's license, and complete community service. Defendant gave notice of appeal in open court.

## II.    Discussion

On appeal, defendant contends the trial court erred in denying his motion to suppress.

> When reviewing a motion to suppress evidence, this Court determines whether the trial court's findings of fact are supported by competent evidence and whether the findings of fact support the conclusions of law. If supported by competent evidence, the trial court's findings of fact are conclusive on appeal, even if conflicting evidence was also introduced. However, conclusions of law regarding admissibility are reviewed de novo.

*State v. Wilkerson*, 363 N.C. 382, 433-34, 683 S.E.2d 174, 205 (2009) (internal citations omitted).

Defendant first argues the trial court erred in concluding the checkpoint was lawful because there was no evidence, nor a finding of fact, that the Brunswick County Sheriff's Office had a written checkpoint policy as required by N.C. Gen. Stat. § 20-16.3A(a)(2a). In support of his argument defendant cites *State v. White*, __ N.C. App. __, 753 S.E.2d 698 (2014), in which this Court affirmed the trial court's grant of the defendant's motion to suppress on the basis that the Anson County Sheriff's Office's "lack of a written [checkpoint] policy in full force and effect at the time of [the] defendant's stop at the checkpoint constituted a substantial violation of [N.C. Gen. Stat. §] 20-16.3A." __ N.C. App. at __, 753 S.E.2d at 703.

N.C. Gen. Stat. § 20-16.3A, which governs checking stations and roadblocks, provides in pertinent part as follows:

> (a) A law-enforcement agency may conduct checking stations to determine compliance with the provisions of

this Chapter. If the agency is conducting a checking station for the purposes of determining compliance with this Chapter, it must:

. . . .

(2a)   Operate under a written policy that provides guidelines for the pattern, which need not be in writing. The policy may be either the agency's own policy, or if the agency does not have a written policy, it may be the policy of another law enforcement agency, and may include contingency provisions for altering either pattern if actual traffic conditions are different from those anticipated, but no individual officer may be given discretion as to which vehicle is stopped or, of the vehicles stopped, which driver is requested to produce drivers license, registration, or insurance information. If officers of a law enforcement agency are operating under another agency's policy, it must be stated in writing.

N.C. Gen. Stat. § 20-16.3A (2013).

In this case, in response to the State's question about whether the sheriff's office has a plan dictating how checkpoints are to be conducted, Sergeant Preston Nowell, who supervised the checkpoint in question, testified, "[y]es, ma'am, we have an SOP [(standard operating procedure)]." Sergeant Nowell then testified how the checkpoint adhered to the SOP. Based on this evidence, the trial court found in finding of fact number five that, "[t]he checkpoint was in accordance with the departmental checkpoint policy, created by Sheriff Ingram."

While the present case is distinguishable from *White* in that there is evidence of a policy governing checkpoints in this case, it is not clear from the evidence or the

trial court's findings of fact whether that policy was in writing. Nevertheless, evidence of the SOP was offered into evidence and defendant never challenged the validity of the checkpoint on the basis that there was not a written checkpoint policy in place. The only issues raised in defendant's motion to suppress were whether there was reasonable suspicion or probable cause to stop defendant's vehicle and whether the checkpoint violated the constitutions of the United States and North Carolina. Then at trial, defendant argued the purpose of the checkpoint was general crime control and the plan for this particular checkpoint was deficient in that there was no standard for what was to be asked or when the checkpoint would start and end. Because defendant raises for the first time on appeal the issue of whether the Brunswick County Sheriff's Office had a written checkpoint policy as required by N.C. Gen. Stat. § 20-16.3A(a)(2a), defendant has waived the argument. *See State v. Anderson*, 175 N.C. App. 444, 451-52, 624 S.E.2d 393, 399 (2006) ("As has been said many times, the law does not permit parties to swap horses between courts in order to get a better mount, . . . meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court." (quotation marks and citations omitted)).

Defendant also argues the trial court erred in denying his motion to suppress because the checkpoint was unconstitutional and, therefore, his seizure at the checkpoint was unlawful.

The stopping of a vehicle at a checkpoint effectuates a seizure and, therefore, is subject to constitutional challenges. *State v. Jarrett*, 203 N.C. App. 675, 677, 692 S.E.2d 420, 423, *disc. review denied*, 364 N.C. 438, 702 S.E.2d 501 (2010). In North Carolina, it is well established that

> "[w]hen considering a challenge to a checkpoint, the reviewing court must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements. First, the court must determine the primary programmatic purpose of the checkpoint. Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint the court must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances."

*Id*. (quoting *State v. Veazey*, 191 N.C. App. 181, 185-86, 662 S.E.2d 683, 686-87 (2008)) (ellipses and brackets omitted).

Concerning the primary programmatic purpose of a checkpoint, in *State v. Veazey*, this Court explained as follows:

> In [*City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333 (2000)], the United States Supreme Court distinguished between checkpoints with a primary purpose related to roadway safety and checkpoints with a primary purpose related to general crime control. According to the Court, checkpoints primarily aimed at addressing immediate highway safety threats can justify the intrusions on drivers' Fourth Amendment privacy interests occasioned by suspicionless stops. However, the *Edmond* Court also held that police must have individualized suspicion to detain a vehicle for general crime control purposes, and therefore a checkpoint with a primary purpose of general crime control contravenes the Fourth Amendment.

> The Supreme Court in *Edmond* also noted that a checkpoint with an invalid primary purpose, such as checking for illegal narcotics, cannot be saved by adding a lawful secondary purpose to the checkpoint, such as checking for intoxicated drivers. Otherwise, according to the Court, law enforcement authorities would be able to establish checkpoints for virtually any purpose so long as they also included a license or sobriety check. For this reason, courts must examine the available evidence to determine the primary purpose of the checkpoint program.

191 N.C. App. at 185, 662 S.E.2d at 686 (internal citations, quotation marks, and brackets omitted).

> Our Court has previously held that where there is no evidence in the record to contradict the State's proffered purpose for a checkpoint, a trial court may rely on the testifying police officer's assertion of a legitimate primary purpose. However, where there is evidence in the record that could support a finding of either a lawful or unlawful purpose, a trial court cannot rely solely on an officer's bare statements as to a checkpoint's purpose. In such cases, the trial court may not simply accept the State's invocation of a proper purpose, but instead must carry out a close review of the scheme at issue. This type of searching inquiry is necessary to ensure that an illegal multi-purpose checkpoint is not made legal by the simple device of assigning the primary purpose to one objective instead of the other.

*Id*. at 187, 662 S.E.2d at 687-88 (internal citations, quotation marks, and brackets omitted).

If the primary programmatic purpose of the checkpoint is found lawful, the trial court must then determine in part two of the analysis whether the checkpoint itself was reasonable on the basis of the individual circumstances. *State v. Gabriel*,

192 N.C. App. 517, 522, 665 S.E.2d 581, 586 (2008) (citing *State v. Rose*, 170 N.C. App. 284, 293, 612 S.E.2d 336, 342 (2005)). "To determine whether a seizure at a checkpoint is reasonable requires a balancing of the public's interest and an individual's privacy interest." *Rose*, 170 N.C. App. at 293, 612 S.E.2d at 342.

> When conducting this balancing inquiry the court should examine: (1) the gravity of the public concern served by the seizure; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty. If these factors weigh in favor of the public interest, the checkpoint is reasonable and constitutional.

*Gabriel*, 192 N.C. App. at 522-23, 665 S.E.2d at 586 (internal quotation marks, citations, and brackets omitted).

In this case, defendant argues the trial court's findings of fact do not support the trial court's second conclusion that "[t]he primary programmatic purpose [of the checkpoint] was to check for Chapter twenty violations." In support of his argument, defendant points to findings of fact six and ten, which provide as follows:

> 6. If vehicles were stopped that had passengers, officers would sometimes ask for their names to see if they had outstanding warrants.
>
> . . . .
>
> 10. The Defendant was then asked if he had any drugs or paraphernalia. The Defendant was also asked if he had consumed any alcohol, where he was going and from where he was coming.

Based on these findings, defendant asserts the primary purpose of the checkpoint was general crime control and any objective relating to highway safety was secondary.

Upon review of the evidence, findings, and conclusions, we hold the trial court did not err in determining the primary programmatic purpose of the checkpoint. In addition to findings six and ten, the trial court issued the following findings:

> 3. The checkpoint was to check for Chapter twenty violations.
>
> . . . .
>
> 9. As the Defendant reached the checkpoint, he was asked to stop his vehicle and produce his license.
>
> . . . .
>
> 11. The questions the Defendant was asked are routine and investigatory and are not unusual.

These unchallenged findings, which are supported by testimony at the suppression hearing, support the trial court's conclusion that the primary programmatic purpose of the checkpoint was "to check for Chapter twenty violations." In fact, these findings, when considered in conjunction with the findings identified by defendant, demonstrate that the trial court considered all the evidence and undertook a "searching inquiry" envisioned in *Veazey* to determine the primary programmatic purpose when there is conflicting evidence. As the trial court noted at the suppression hearing, it cannot base its decision on hypotheticals.

We hold the trial court did not err in determining the primary programmatic purpose of checking for Chapter twenty violations was lawful. Although this Court noted in *Veazey* that "it is unclear whether a primary purpose of finding any and all *motor vehicle* violations is a lawful primary purpose[,]" 191 N.C. App. at 189, 662 S.E.2d at 689 (emphasis in original), defendant has not directed this Court to any cases holding that checking for Chapter twenty violations is an unlawful purpose. Given that checkpoints to verify drivers' licenses and vehicle registrations and sobriety checkpoints have been determined lawful, *see Rose*, 170 N.C. App. at 288, 612 S.E.2d at 339, we hold the trial court did not err in determining the checkpoint for Chapter twenty violations was lawful.

Furthermore, although defendant limits his argument on appeal to contesting the trial court's determination of the primary programmatic purpose, we note that the following findings by the trial court concerning the reasonableness of the checkpoint support its determination that "[t]he checkpoint was indeed lawful[:]"

> 12. Pursuant to the statutes and case law, the Court balanced the public's concern against the seizure using a three prong test as is required.
>
> 13. The public concern with regards to Chapter twenty violations and traffic on NC-133 ("River Road") certainly outweigh the brief seizure of the Defendant.
>
> 14. The seizure did indeed advance the public interest and the safety of the community.
>
> 15. The severity of the interference on the individual's

liberties was minimal.

As a result, we hold the trial court did not err in denying defendant's motion to suppress. The checkpoint did not violate defendant's constitutional rights.

### III.    Conclusion

For the reasons discussed above, we affirm the order of the trial court denying defendant's motion to suppress.

AFFIRMED.

Judges STROUD and INMAN concur.

Report per Rule 30(e).